145 So.2d 794

Frances Day HALL et al.

v.

Evelyn Strickland GULLEDGE et al.

6 Div. 670.

Supreme Court of Alabama

Oct. 18, 1962.

Smyer, White, Reid & Acker, Birmingham, for appellees.

Rives, Peterson, Pettus & Conway, Birmingham, for appellants.

SIMPSON, Justice.

This is an appeal from a decree sustaining demurrer to a bill for declaratory judgment brought before the enactment of Act #72, Special Session Ala.Legis., 1961, 1947, abolishing such appeals.

Appellants filed their bill alleging in substance the following:

That the complainants Pettus are the owners of Lot 14 and complainant Hall is the owner of Lots 27 and 28 of Block 3 of Redmont Park Subdivision in the City of Birmingham;

That Lots 25 and 26 were conveyed in 1950 by deed from Redmont Land Company, the developer of the subdivision, to Magic City Development Company. This deed imposed certain restrictions on the lots for the benefit of complainants and are enforceable by complainants against respondents who had actual or constructive notice thereof. On August 17, 1959, a deed was executed conveying to respondent Evelyn Strickland Gulledge Lot 26 and also in 1959, a deed was executed conveying Lot 25 to respondent Robbie A. Strickland. There is a common boundary line between Lot 27 and Lots 25 and 26. Complainant Hall has restrictions imposed upon her real property by virtue of deed from Redmont Land Company, Inc. to M. C. Stewart, dated December 1, 1924. Such restrictions preclude more than one dwelling being erected upon such land and prescribe the proximity of such a dwelling both to Lenox Road, the street on which the property faces, and to the side lines of the property, one of which is common to Lots 25 and 26. Complainants Pettus have restrictions placed upon the use of their property by virtue of a deed from Redmont Land Company, Inc., to E. L. Ford, dated January 7, 1926, which are similar to those placed upon complainant Hall's property and placed upon the respondents' property.

The reservations, limitations and restrictions involved, pertinent to decision, read:

"There is excepted from this conveyance and reserved to the grantor, its successors and assigns, an easement six (6) feet in width along the rear property line of said lot for electric light and telephone poles and lines, and for sewers; and also along the east line of said Lot Twenty-five (25) for storm sewer,

"There is also excepted from this conveyance and reserved to the said grantor, its agents, successors or assigns, or to the agents of any public utility, the right of ingress and egress to and from said property, for all necessary purposes in connection with laying and maintaining sewerage, gas and water mains and pipes, and electric and telephone poles and wires, on and over the easements herein above reserved:

"This conveyance as to both of said lots, considered as an entirety, is made subject to the following conditions, limitations and restrictions, namely:

"(1) That the said property shall be used for residence purposes only, and not for any purpose of business or trade;

"(2) That no building except a single dwelling house, with necessary out buildings, shall be erected or maintained on said property, such dwelling house to cost in its construction not less than $12,500; it is intended hereby to prohibit the erection on said property of any double, duplex or apartment house;

"(3) That no temporary buildings, servants' houses, stables, garages or other buildings shall be used for residence purposes prior to the completion of a dwelling house on said property, in accordance with these restrictions;

"(4) That no dwelling shall be erected on said property, the front line of which (which means the front line of porch, or terrace, or any projection, not counting steps) shall be nearer the side lines of said property than 25 feet;

"(5) No outbuilding, garages and servants' houses on said property shall be erected except in the basement of the dwelling, facing the side or rear;

"(6) That no fences shall be erected on said property in front of the front line of the residence;

"(7) That no building shall be erected or begun on said property without plans, specifications and location therefor having first been submitted to and approved, in writing, by the grantor, or its agents, successors or assigns;

"(8) The grantor reserves the right to make any street or other improvements abutting on said property, and to change the present street or alley grades, if necessary, without liability to the grantee or assigns for any claim for damages; and, further, reserves the right to change or modify the restrictions on this or any property in Redmont Park.

"It is understood and agreed that as a part of the consideration for this conveyance, the grantee herein agrees to conform to the foregoing conditions, limitations, and restrictions and that said conditions, limitations and restrictions shall attach to and run with the land, and that it shall be lawful for the said grantor, its successors or assigns, to institute and prosecute any proceedings at law or in equity against the person, persons, corporation or corporations violating or threatening to violate the said conditions, limitations and restrictions, and the said conditions, limitations and restrictions may be proceeded upon against the said grantee, heirs or assigns, for a specific execution thereof, and, that any failure on the part of the grantor, its successors or assigns,

to assert any right as herein provided shall not be deemed a waiver thereof, but it may at any time assert the same. The bill further averred that:

"Redmont Park is, and has been for many years, one of the finest residential subdivisions within the city limits of the City of Birmingham, Alabama, and has been preserved as a fine residential subdivision by reason of the fact that the original owner and developer of the subdivision, Redmont Land Company, Inc., in conveying property in said subdivision to purchasers, included in the original deeds of conveyance from it limitations, conditions, and restrictions constituting covenants running with the land for the benefit of itself and for the benefit of property owners purchasing lots in said subdivision, similar to those [hereinabove] set forth. * * *

"Complainants aver that the above quoted restrictions applicable to Lots 25–26 constitute conditions, limitations and restrictions attaching to and running with the land and constitute covenants running with the land and are enforceable, according to the terms thereof against respondents, who had actual or constructive notice of same at and/or prior to their acquiring any interest in said Parcel Lots 25–26, by complainants, who own real estate in said subdivision, known as Redmont Park as aforesaid, the title of which is derived from Redmont Land Company, Inc., through successive predecessors in title respectively. Complainants further aver that the respondents derived their interest in Lots 25–26 from Redmont Land Company, Inc., through successive predecessors in title, said Lots 25–26 being held by each of the predecessor owners after the conveyance from the Redmond Land Company, Inc., as aforesaid."

The bill avers that violations of the restrictions set forth above are threatened by the respondents and that respondents contend that the side line restriction does

not apply to the boundary line between the respondent's property and the Hall property for such line is not a side line but rather a rear line. It also avers that respondents contend that the single dwelling restriction does not prohibit building more than one dwelling on Lots 25–26, considered as an entirety.

The bill sought a declaratory judgment stating that the covenants of the deed mean that a dwelling cannot be built closer than 25 feet from the boundary between Lots 25–26 and Lot 27, and that the said boundary line is a side line of Lots 25–26. Further, that the covenant in the deed relative to a single dwelling means that only one dwelling can be constructed on Lots 25–26 as an entirety.

The respondents filed demurrers to the bill which were sustained by the trial court in a decree also dismissing that aspect of the bill seeking a declaration that respondents could not build a house within 25 feet of the common boundary line between Lot 27 and Lots 25–26. It is from this decree that complainants appeal.

■ If there was error in sustaining the demurrers, then the decree appealed from must be reversed. We have long been committed to the proposition that the only requirement for a bill for a declaratory judgment to withstand a demurrer is that it state a justiciable controversy. If a justiciable controversy is stated, the demurrer should be overruled. We recently stated the rule as follows:

"If a bill for declaratory relief states the substance of a bona fide justiciable controversy, which should be settled, it is sufficient to withstand a demurrer directed to it. In such situation the demurrer should be overruled and a declaration of rights made and entered only after answer and on such evidence as the parties may deem proper to introduce on submission for final decree. This is to say that the test of the sufficiency of such a bill is not whether it shows that the complainant

will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all." Little v. Redditt, 264 Ala. 371, 88 So.2d 354.

The same rule has been applied in cases involving bills brought for declaratory judgment praying interpretation of deeds. McCall v. Nettles, 251 Ala. 349, 37 So.2d 635; Pugh v. Whittle, 240 Ala. 503, 199 So. 851.

■ Appellees insist that the recognized exception to the general rule should be applied in this case, insisting that the demurrer was properly sustained since as a matter of law the bill showed that appellants had no standing to sue. We cannot agree.

In Scheuer v. Britt, 218 Ala. 270, 118 So. 658, we quoted with approval the following from 4 Thompson on Real Prop., § 3398:

" 'Where the owner of a tract of land adopts a general scheme for its improvement, dividing it into lots, and conveying these with uniform restrictions as to the purposes for which the lands may be used, such restrictions create equitable easements in favor of the owners of the several lots, which may be enforced in equity by any one of such owners. Such restrictions are not for the benefit of the grantor only, but for the benefit of all purchasers. The owner of each lot has as appurtenant to his lot a right in the nature of an easement upon the other lots, which he may enforce in equity.

" 'Whether such restriction creates a right which inures to the benefit of purchasers is a question of intention, and to create such right it must appear from the terms of the grant, *or from the surrounding circumstances*, that the grantor intended to create an easement in favor of the purchaser.' "

We further stated:

"In such cases the equitable right to enforce such mutual covenants is rested on the fact that the building scheme forms an inducement to buy, and becomes a part of the consideration. The buyer submits to a burden upon his lot because of the fact that a like burden is imposed on his neighbor's lot, operating to the benefit of both, and carries a mutual burden resting on the seller and the purchasers."

Quoting from the opinion in the same case on a former appeal it was noted:

" 'Where a defined district is platted and publicly offered as a restricted district, the restrictive clauses in the several deeds are construed as mutual covenants, each lot subject to a servitude or easement in favor of all the others, *including unsold lots of the grantor in the same plat*. Such servitude being appurtenant to and running with the land, *any subsequent purchaser of the lot within the plat*, with notice of the easement thereon, takes it subject thereto, as between himself and other lot owners * * *.' "

See, 60 A.L.R. 1228.

Again, in Virgin v. Garrett, 233 Ala. 34, 169 So. 711, we stated:

"It is apparent that the inquiry involves two questions: (1) Did the restrictions attach as appurtenant to Lot No. 2, and run with it? (2) Did appellant have notice of its existence as such appurtenance when she purchased part of Lot No. 1?

\*     \*     \*     \*     \*     \*

"The question of law which exists in such cases is whether or not the grantor in the deed containing the restriction agreed expressly or impliedly that the restriction is for the benefit of the owner of other property in subdivision, whether it had been sold or not. Such a contract may be inferred from the circumstances and terms of the instrument, and need not be expressed either verbally or in writing. The test is

said to be the intention of the grantor in creating the restriction. * * * That intention may be proven as is any other fact in the light of legal presumption or precedents."

Quoting from an earlier case (McMahon v. Williams, 79 Ala. 288, p. 291) we again approved the above principal in the following language:

" 'One of the most practical tests, supported by common sense and common business experience, is, whether the restriction imposed by the grantor or proprietor upon the granted premises would naturally operate to enhance the value of his adjacent premises, whether retained by him or conveyed to another. If this be so, it is a strong circumstance to indicate that the restriction was not intended for the mere personal benefit of the grantor, but as a permanent servitude beneficial to the owner of the land, whoever he may be, and appendant to the premises. * * * The inquiry, in these cases, has generally been, whether the servitudes or restrictions imposed were of such a nature as to operate as an inducement to purchasers; and, if so, the inclination of the courts has been to construe them as appurtenant to the estate, and intended for its protection, rather than personal to the grantor. If appurtenant, it of course follows the land, being assignable with it, and each grantee can enforce it in equity against each other grantee having notice of it.' " Virgin v. Garrett, supra.

Appellees contend that the reservation by the grantor of the right to change or modify the restrictions as to any lot in Redmont Park negates any intention to benefit the lands of other owners. We cannot agree with this contention. To do so would be to construe this language as indicative of his intention to the exclusion of all other language in the deed and all surrounding circumstances. We have in the past given effect to restrictions contained in deeds at the instance of grantees

of lots in subdivisions where the grantor' had expressly reserved the right to waive, release or annul the restrictions contained in the plot and conveyance. Thrasher. v. Bear, 239 Ala. 438, 195 So. 441. It seems to us that the power to change the restrictions is only one factor to be considered in determining the intention of the grantor to give the right of enforcement of the restrictions. All language of the deed should be considered in arriving at the grantor's intention. We believe when all the language of the deed under consideration is considered, it is apparent that these complainants (appellants) have a standing to bring this action. We are impelled to the conclusion that the learned trial court erred in sustaining the demurrer directed to the bill and the decree appealed from must be reversed.

This being our conclusion, we believe that we should not proceed to a determination of the meaning of the restrictions sought to be interpreted. This should be made by the trial court after a consideration of the evidence adduced at a hearing on the merits.

Reversed and remanded.

LIVINGSTON, C. J., and MERRILL and HARWOOD, JJ., concur.