The plaintiff, Dauphin Island Property Owners Association, Inc., appeals from a decree denying it a permanent injunction against the Kuppersmiths. We reverse and remand.
The Association brought the suit to compel the removal of a boat lift which was being constructed on the rear of a residential lot located in the Indian Bay Addition to the 1953 Subdivision of Dauphin Island. The complaint alleged the violation of certain building restrictions and protective covenants because of the construction.
The defendant, Gennett H. Kuppersmith, is the record title holder of Lot 42 of the Indian Bay Addition. Her husband, the co-defendant, C.B. Kuppersmith, Jr., is a former joint owner of this lot and is the person who oversaw the construction after an unsuccessful effort to obtain a building permit for the job.
Although there is no controversy concerning the applicability of the restrictive covenants and building permit requirements to Lot 42, a description of these is pertinent here. Generally the 1953 Subdivision of Dauphin Island was subject to extensive restrictions respecting the erection of buildings, including the condition precedent of prior approval of an architectural committee of the Property Owners Association. According to the restrictions, in the event of the committee's failure to act upon a request for thirty days, the approval is waived. Notice of disapproval is specified as either personal delivery or delivery by registered mail sent to the "last known address." It is specifically stated in these restrictions that:
 The failure to enforce any of the restrictions herein set forth at the time of their violation shall in no event be deemed to be a waiver of the right to do so thereafter.
In addition to this and other restrictions applicable to the Island subdivision as a whole, there are additional restrictions applicable to the several smaller subdivisions of the Island, including the Indian Bay Addition. The Indian Bay restrictions adopted the building permit requirements of the general restrictions and, in addition, contained a restriction pertaining to piers and wharfs:
 No pier or wharf shall be constructed more than 2 feet in height above the adjacent sea wall. No roof, shelter or other permanent structure, except hand rails, benches and tie pilings, may be built or erected on any such pier or wharf in the Indian Bay Addition. Two tie off pilings will be permitted at each wharf, but the same shall not be more than 35 feet distant into the water from the sea wall.
Variances in the restrictions applicable to Indian Bay may be authorized by a majority of the property owners of that block, after first having been approved by the architectural committee and two-thirds of the members of the board of directors of the Association, in that order.
The defendants obtained building permits from the Association for a house they built on Lot 43 (which they also owned) sometime prior to 1971. Then in 1971, they obtained another building permit to construct a garage which partially extended onto Lot 42. In 1971, they also obtained a variance allowing them to construct a "boat stall cover," a structure very similar to the "boat lift" in question.
On March 12, 1977, C.B. Kuppersmith, Jr. went to the home of the Association's secretary, John B. Young, and orally requested a permit to build the boat lift. This conversation took place on the morning before the afternoon on which the board of directors met. Young presented the request to the directors that afternoon, but the request was denied. Young informed the Kupersmiths of the board's action by letter dated March 16, 1977 which he sent through the mail to their Mobile address because they did not live on Dauphin Island. Kuppersmith began construction of his proposed boat lift in April, and testified that he received this letter after he had begun construction, and after he had received a permit from the Corps of Engineers. He conceded that he had begun construction *Page 33 
without the permit but had desisted from completion when he received a letter from the Association's lawyer containing that suggestion. The structure consisted of eight large creosoted pilings based in the bay water and six large creosoted pilings based on land, ten or eleven feet above the sea wall. Beams tied the pilings together and supported a boat lift hoist. Kuppersmith proposed to construct a roof of one foot in height, which would have resulted in a total height of eleven feet or more above the bay water.
After a hearing ore tenus the trial court denied injunctive relief. Although no reasons for that decision were announced the Association now contends that such a decision was plainly and palpably wrong under the evidence. Whether or not that position is correct depends upon whether or not the evidence clearly disclosed violations of restrictions, and if so, whether or not the Association was estopped to assert them.
The first issue deals with the alleged violation of construction without a building permit. The defendants would have us interpret the word "building" as used in the applicable restriction as referring only to habitable structures. We cannot agree that such a narrow definition was contemplated by the developers. Quite the contrary, the language in the several paragraphs pertaining to architectural control suggests the contemplation of a variety of structures. Paragraph 1 states that "no building" is to be constructed, etc. without approval of structural design, quality and location. No qualifying language as to type or character is present. Sub-paragraph (c) establishes different fees for the issuance of permits for construction of different types of buildings, and distinguishes between main residences, commercial buildings, and outbuildings. These distinctions accord with the usual understanding of the term "building" and with the definition found in Webster's Third New International Dictionary (G. C. Merriam Co., 1971) at 292:
 [A] constructed edifice designed to stand more or less permanently . . . serving as a dwelling, storehouse, factory . . . or other useful structure . . .
Indeed, a pier has been held to be a building. Ambrose andCompany v. Hutchinson, Tex.Civ.App., 356 S.W.2d 215 (1962). Cf.Wimberly v. Mayberry, 94 Ala. 240, 10 So. 157 (1891) (the term "building" refers to an independent erection upon the land). It follows that the boat lift structure was a "building" for whose construction a permit was necessary under the restrictions.
The second issue concerns the alleged height and roof restriction violations. The defendants maintain that the two-foot height requirement, "no pier or wharf shall be constructed more than 2 feet in height above the adjacent sea wall," applies either to a pier floor, its supporting pilings, or both. They insist that the pier or catwalk here does not exceed the height limitation, and point us to a photograph introduced as plaintiff's exhibit 3. Perusal of that exhibit, however, reveals nothing identifiable as a catwalk. Defendants' exhibit D, however, does contain a photograph ("R") which, though somewhat indistinct, identifies what may be a catwalk outside the two tiers of connected pilings. This photograph also discloses the cross-members which cover the tops of the pilings, all of which conform to Kuppersmith's own height description of the structure which was that it was ten or eleven feet above the sea wall. These descriptions clearly support the conclusion that the boat lift building (conceded by both sides as a kind of "pier or wharf") as constructed violates the height restriction. The same conclusion must be reached concerning the alleged roof violation. The evidence conclusively shows the existence of large beams above the pilings. Although these of course do not represent a completed roof, they are nonetheless component parts of the roof which Kuppersmith admittedly intended to complete but for the letter he received, the height of which would have been approximately one foot above the pilings.
The principal argument of the defendants is that the Association is estopped to assert these violations because of its acquiescence *Page 34 
in similar violations, namely, those pertaining to the limitation of two tie-off pilings. It is undisputed that there were in the Indian Bay Addition numerous instances of the violation of that restriction. The Association has not raised that issue in this suit as a basis for affirmative relief; however the defendants raised it as a defense, and assert that in spite of a long history of those violations, the Association did nothing to curb them until 1976. The defendants' assertion that this acquiescence is a defense for them poses the crucial issue: does acquiescence in the violation of one restriction constitute acquiescence in the violation of another?
This question was confronted in Brown v. Morris, 279 Ala. 241, 184 So.2d 148 (1966). In that case the property was subject to a number of restrictions, among them being:
 "1. * * * No lot shall be used except for residential purposes. . . .
. . . . .
 "3. Building Location. * * * (Here follow certain restrictions as to the location of the building on each lot.[)]"
When one lot owner sought to enforce against another the restriction concerning residential purposes, the defense was that there were "at least eight" houses built on lots in violation of the restriction relating to location, and thus the restriction as to building character was waived. In response to that argument this Court observed:
 There is no evidence that there has been any deviation, invasion or waiver by any of the owners of the restricted lots as to the type or character of buildings allowed or permitted by the covenants on these lots. Owners might suffer deviation as to locational uniformity on the lots, and subject themselves to a contention that they had waived compliance in this respect, but we do not think such contention, if valid and meritorious should overflow into another area of uniformity, namely, the character and type of buildings allowed. We pretermit deciding the effect of failing to take action for compliance in the area of uniformity as to location of residences in accord with the covenant. We merely hold that such failure does not ripen into a waiver of restrictions as to the type and character of buildings that may be erected on the lots.
 To hold otherwise would require the lot owners or purchasers in a subdivision impressed with covenants, as here, to be on the alert for locational deviations and to bring suit forthwith lest there be an accumulation of locational violations that would open the flood gates to a complete abandonment of all restrictive covenants affecting the subdivision under consideration. We don't think such bird-dogging and legal action is required in all facets of restrictive covenants affecting the area, in order to preserve the integrity of the covenants not related to the deviations. It was held in Thorburn v. Morris, 75 A. 757 (N.J.), that parties may abandon a scheme of restrictions as to a part of their property, and maintain it as to other portions. Certainly, appellants have a right to maintain the restrictions as to the type and character of buildings to be placed on the restricted lots even though they should abandon the restrictions as to the location of residences on the restricted lots. [Citations omitted]
In accord with that position, we hold that any failure of the Association to enforce the two-tie pilings restriction did not constitute estoppel by acquiescence to assert either the height and roof restrictions or the building permit restriction. Insofar as there might be some slight similarity in the construction of boat ties and a boat lift of the type in question here, because of the use of pilings in both, even so the two structures are obviously dissimilar in both appearance and character, and thus the restrictions applicable to each retain their separate identities.
Nor is any estoppel by acquiescence or waiver established by proof of the existence of another boat shed cover, or boat lift, owned by a lot owner in Indian Bay Addition. In that particular instance the structure was permitted as a variance by the Association after the specified procedures were followed. Such a deliberate adherence *Page 35 
to the restriction procedures cannot be deemed an estoppel or waiver.
Finally, the defendants contend that certain petitions, signed by a majority of the lot owners, to amend the restrictions and permit roofs or shelters to be erected on any pier or wharf in Indian Bay Addition, demonstrate the desires of those owners to effect such amendments. That conclusion may be a proper one; however there was no evidence of any adoption of any such amendment by a vote of the majority required by the covenants, and no such contention is made. Apparently, the position of defendants is that these petitions show that at the end of twenty-five years following their adoption, the restrictions in question would be annulled or amended, and, having only a short time to run before that event it would be justifiable to assume now that they have been tacitly amended by the petitions themselves.
It is true that the restrictions are to exist for a period of twenty-five years, but at the expiration of that time they are automatically extended for successive ten-year periods unless a majority of the lot owners vote otherwise. The existence of the petitions, although they may have applied to the structure in question, in themselves did not amend the restrictions. It is clear that more formal action was required under the restrictions to effect their amendment. Those procedures, as well as the restrictions themselves, were part of the development scheme which formed inducements to purchase the lots, and thus became part of the consideration running to the respective lot owners. Each had their benefit and each had their burden. Scheuer v. Britt, 218 Ala. 270, 118 So.2d 658
(1928). The wisdom in their continuance is not for us to decide.
Under the evidence the trial court's decree was plainly and palpably wrong. Lott v. Keith, 286 Ala. 431, 241 So.2d 104
(1970). The judgment is reversed and the case is remanded for further proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, ALMON and SHORES, JJ., concur.