413 So.2d 1115 (1982)
Gary B. WRIGHT, et al.
v.
CYPRESS SHORES DEVELOPMENT CO., INC.
80-307.
Supreme Court of Alabama.
April 30, 1982.
*1116 Thomas A. Deas of McDermott, Deas & Boone, Mobile, for appellants.
William M. Lyon, Jr. of McFadden, Riley & Parker, Mobile, for appellee Cypress Shores Dev. Co., Inc.
Charles S. Street of Clay, Massey, Street & Gale, Mobile, for appellee Norman Clark.
EMBRY, Justice.
Plaintiffs appeal in this action for a declaratory judgment and injunctive relief. The rights sought to be declared were that certain restrictive covenants, applicable to a subdivision in which plaintiffs owned lots and resided, prohibited the building and operation of a convenience store on any lot or lots within the subdivision. The injunctive relief concomitantly sought was to enjoin one of the defendants, who had purchased two lots in that subdivision, from excavating and constructing a convenience store on those lots, after the designated agent of the developer had annulled those restrictions as they applied to the two lots purchased.
The determinative issue is whether the declarant of those restrictive covenants running with the land, acting through an agent established by it in the declaration, has a legal right to unilaterally abolish or modify those restrictions if such right is clearly preserved in the original declaratory document, even though lots and dwellings had been purchased in reliance upon those covenants.
The facts in this case were less than fully developed because of the manner in which the trial was conducted. A hearing was set upon the application of plaintiffsGary B. and Audrey J. Wright; Jerry D. and Betty J. Cornelius; and, Kenner and Stella Rodgersfor preliminary injunction against defendant, Norman H. Clark, purchaser of Lots 46 and 47 in Revised Cypress Shores (Subdivision)Unit Four, which Clark had begun to excavate for the construction thereon of a convenience store. When this hearing commenced, the attorney for the Wrights, Corneliuses, and Rodgerses requested that the trial court hear the entire case, as well as the application for injunction, on the merits. Upon objection being made, this request was denied. At the conclusion of the hearing, the objection was withdrawn and it was agreed that the matters would be consolidated; that hearing, perforce, became a final one. However, when the hearing commenced, with the objection made, the trial court exerted a great deal of pressure on plaintiffs' attorney to stipulate to facts expected to come from the testimony of readily available witnesses. As a result, it appears from the record that plaintiffs were effectively prevented from fully exposing the facts to the trial court as they wished to do. Nevertheless, the facts appearing in the record are sufficient for resolution of the controlling question of law.
The pertinent facts are that, during 1963, Cypress Shores Development Company, Inc., platted and recorded a survey of Cypress ShoresUnit Four (Subdivision). A declaration of covenants, restrictions and limitations pertaining to that subdivision was also recorded. Those portions of that instrument pertinent to this case read:
"KNOW ALL MEN BY THESE PRESENTS, that CYPRESS SHORES DEVELOPMENT CO., INC., a corporation organized and existing under the laws of the State of Alabama (hereinafter called Declarant), does hereby make, publish and declare as follows:
"Declarant, the owner of all of the real property lying, being, and situate[d] in that certain subdivision known as `CYPRESS SHORES' and being designated as UNIT NO. 4, according to the plat of survey thereof recorded in MAP BOOK 14, PAGE 82, of the records in the office *1117 of the Judge of Probate Court of Mobile County, Alabama, said plat being made a part hereof by reference thereto, does hereby covenant and agree with each and every future owner of any part of said property, and each and every such future owner shall, by virtue of becoming such an owner, accept and agree with Declarant and with each and every other owner or future owner of any of such property, that the following covenants, restrictions and limitations shall apply to said subdivisions; and
"Said covenants, restrictions and limitations shall run with the land and be binding on all parties and all persons claiming under them for a period of twenty-five (25) years from the date these covenants are recorded, unless prior to the expiration of such period said committee elects to extend same, whereupon same shall be extended for such period as the Committee shall determine. To so extend same, an instrument reciting such extension, signed and acknowledged by a majority of the then members of said Committee shall be recorded in the Office of the Judge of the Probate Court of said County prior to such expiration; and
"If the Declarant, or its successors or assigns, or any such future owner or owners, or the successors, heirs or assigns of any such future owner or owners, shall violate or attempt to violate any of the covenants herein, it shall be lawful for any person or persons owning any real property situated in said subdivision, to prosecute any proceedings at law or in equity against the person or persons violating or attempting to violate any such covenants and, either to prevent such person or persons from so doing, or to recover damages for such violation; and
"Invalidation of any one of these covenants by judgment or court order shall in nowise affect any of the other provisions which shall remain in full force and effect.
"1. USE. All lots in said subdivision shall be known and designated as residential lots. No building or structure shall be erected, altered, placed or permitted to remain on any residential building lot other than one detached single-family dwelling not to exceed two (2) stories in height and a private garage for not more than three (3) cars or servants' quarters and appropriate outbuildings. No building, temporary or otherwise, shall be erected or brought onto such property, for residence purposes, previous to the commencement of construction of the permanent residence on such lot.
"2. DWELLING REQUIREMENTS. No dwelling house or residence shall be erected on any lot, the ground floor area of which, exclusive of verandas, open porches (not having exterior walls), garages, breezeways, carports, and patios, shall not be less than 1200 square feet for a one (1) story dwelling, not less than 800 square feet for a dwelling of more than one (1) story.
"3. ARCHITECTURAL CONTROL. No building shall be erected, placed, or altered on any building plot in this subdivision until the building plans, specifications and plot plan showing the location of such building have been approved in writing as to conformity and harmony of external design with existing structures in the subdivision, and as to location of the building with respect to topography and finished ground elevation, by a committee composed of Kenneth R. Giddins [sic], Arthur Tonsmeire, William Lyon, and Emmett McFadyen, and any officers of Cypress Shores Development Co., Inc. acting as such officers from time to time, or by a representative designated by a majority of the members of said Committee, nor until a copy of the building plans, specifications and plot plan shall be deposited with such committee, to be retained by such Committee until the building be completed. In the event of death or resignation of any member of said committee, the remaining member or members, shall have full authority to approve or disapprove such design and location, or to designate a representative with like authority.
". . . .

*1118 "6. NUISANCES. No noxious or offensive trade or activity shall be carried on or maintained on any lot in said subdivision, nor shall anything be done thereon which may be or become an annoyance, or a nuisance in the neighborhood.
". . . .
"8. SIGNS. No sign of any kind shall be displayed to the public view on any lot except one professional sign of not more than one square foot, one sign of not more than 5 square feet advertising the property for sale or rent, or signs used by a builder to advertise the property during the construction and sales period.
"....
"15. SIGHT DISTANCE AT INTERSECTIONS. No fence, wall, hedge, or shrub planting which obstructs sight lines at elevations between 2 and 6 feet above the roadways shall be placed or permitted to remain on any corner lot within the triangular area formed by the street property lines and a line connecting them at points 25 feet from the intersection of the street lines, or in the case of a rounded property corner from the intersection of the street property lines extended. The same sight-line limitations shall apply on any lot within 10 feet from the intersection of a street property line with the edge of a driveway or alley pavement. No tree shall be permitted to remain within such distances of said intersections unless the foliage line is maintained at sufficient height to prevent obstruction of such sight lines.
"This instrument and any and all of the covenants, restrictions and limitations or requirements herein set forth may be annulled, cancelled, amended or modified at any time or times by an instrument signed and recorded in the Office of the Judge of the Probate Court of said County by said Architectural Control Committee as comprised from time to time, acting by and through a majority of its members; provided, however, no amendment shall place an additional restriction or limitation on any specific lot in said subdivision, unless the owner of such lot joins in said amending instrument. Said Committee, acting by and through a majority of its members, may waive any one or more of the covenants, restrictions, limitations or requirements herein specified by an instrument in writing signed and acknowledged by a majority of the members comprising such Committee from time to time.
"IN WITNESS WHEREOF, Declarant has caused this instrument to be executed in its name and on its behalf and its corporate seal to be hereunto affixed and duly attested by its officers thereunto duly authorized, on this 21 day of March, 1963."
The Wrights, Corneliuses, and Rodgerses own lots and residences in the subdivision that are subject to the restrictive covenants. Defendant Norman H. Clark purchased lots 46 and 47 in the subdivision likewise subject to the restrictive covenants. However, it also appears that he purchased those lots for the purpose of erecting a convenience store thereon which would be operated under the name "Compac." It further appears that before the lots were conveyed to him, defendants Kenneth R. Giddens, Arthur Tonsmeire, and William Lyon, acting as the Architectural Control Committee, annulled, canceled and modified the instrument of declaration and all the covenants, restrictions, limitations and requirements contained in it, insofar as they related to lots 46 and 47.
Additionally, the record reveals a salient fact to which the litigants seemingly attribute little significance. There had formerly been a Compac convenience store operating diagonally across the street from the Wrights' residence at the time they purchased it. That store was destroyed by Hurricane Frederic in September 1979. There was conflicting evidence regarding the duration of the operation of that store but there is abundant evidence that, although it may not have been a nuisance subject to abatement or other legal action by plaintiffs, it was certainly, at least, an extreme annoyance to residents of Unit Four, including the Wrights. What indeed is significant, but not noted by the litigants, *1119 is the fact that the previous Compac operated diagonally across the street from the Wrights was in another subdivision than Unit Four. The proposed Compac, it is true, would be located across the street from the Wrights; however, it would be in the same subdivision: Unit Four.
The evidence shows that plaintiffs relied upon the original restrictions when they purchased their respective properties. There is abundant evidence regarding diminution in value of the properties of plaintiffs if the Compac is erected and operated, because of the nature of the business, traffic, noise, etc. Obviously, this evidence was presented in support of the application for injunctive relief and damages. However, resolution of the issue upon which the outcome of this case turns is largely a matter of law.
Able counsel for the opposing parties have filed excellent and exhaustive briefs supporting their respective theories regarding the rights and obligations of their clients under decisional law that each regards as controlling. This is also true for the well-prepared and well-presented oral arguments.
Appellants summarize their contentions in the following excerpts from their briefs:
"Appellees, Cypress Shores Development Company and Compac Owner state in [their] brief ... as follows:
`In the instant case, the question of standing is not at issue. Rather, the issue presented is whether a developer/grantor having unqualifiedly reserved the power to cancel or annul restrictive covenants, may, acting through its designated representative pursuant to such power, remove restrictive covenants.'
The thrust of Appellees' argument is that Cypress Shores Development Company reserved the power to cancel residential use restrictions applicable to Lots 46 and 47 and this Court must uphold the cancellation regardless of the original development scheme and plan to insure the development of a residential subdivision in spite of the hardship caused adjoining property owners who purchased property in reliance upon the original restrictions. In effect, Appellees seem to argue, as predicted in our initial brief, that the Architectural Control Committee was formed as an alter ego for Cypress Shores Development Company and its function was to act solely on behalf of the development company. It is certainly obvious the Architectural Control Committee represented only the interest of the development company respecting the transaction with the Compac Owner leading to this appeal. However, it is abundantly clear the Architectural Control Committee was originally formed to protect all property owners and to act in a manner to insure that a uniform plan of development was followed in Cypress Shores.
"Based on the Appellees' argument this Court may decide to address the broader question of the legal right of a developer/owner to cancel or amend restrictive covenants running with the land, based on Appellees' assertion that the right is clearly preserved in the original document. With respect to the broader question this Court commented in the case [of] Schmidt v. Ladner Construction Co., Inc., 370 So.2d 970 (1979), as follows:
`Indeed, our preliminary research ... shows that this broader question is in a state of considerable confusion and far from settled where purchasers have acted in reliance upon the original restrictions.' at 972 (citing Callahan v. Weiland, 291 Ala. 183, 279 So.2d 451 [1973]).
"In point of fact, Cypress Shores Development Company did not specifically reserve the power to cancel the restrictive covenants applicable to the forty-seven lots in Unit 4 of the subdivision. Rather, the 1963 recorded `Covenants, Restrictions and Limitations' instrument permits an Architectural Control Committee to cancel the residental use restrictions. A reading of the restrictions as a whole will lead to the conclusion that in 1963 Cypress Shores Development Company intended the residential use restrictions to be part of a uniform plan of development *1120 and were applicable to all forty-seven lots. In 1963 Cypress Shores Development Company desired to develop a high-class residential area. Original purchasers bought lots in reliance upon these restrictions. These same purchasers resold their properties to other purchasers who bought same in reliance on these restrictions. For approximately seventeen years additional protections were afforded all property owners because of the existence of an Architectural Control Committee. Clearly, all property owners of Cypress Shores depended upon the Architectural Control Committee to act in a reasonable manner consistent with the original plan of development...."
Appellants' reply brief, pp. 1-4.
Appellants state in their initial brief, at p. 28:
"Clearly, the Architectural Control Committee has not only amended the Cypress Shores restrictions in an unreasonable manner; this Committee obliterated all restrictions insofar as they relate to the lots bought by the Compac owner. Justice requires this Court to hold as a matter of law that the Architectural Control Committee acted in an unreasonable, arbitrary manner contrary to the covenants placed on record and in a manner inconsistent with the general scheme or plan of development of Cypress Shores Subdivision. Otherwise, it is reasonable to expect the heart of other residential neighborhoods will be changed overnight simply by the stroke of a pen at the hand of committee members who decide the fate of restrictive covenants."
Appellees summarize their position as follows:
"The appellees respectfully submit that the reservation of the right to cancel and annul the restrictive covenants, being clearly preserved in the original document whereby the covenants were imposed, the exercise thereby [of] the members of the Architectural Control Committee to remove the covenants as to Lots 46 and 47 pursuant to such reservation, constitute a valid reservation and use of the said right...."
Appellees' brief, p. 13.
Authorities cited by the parties to support their respective positions include those of other jurisdictions as well as those of this court. The following propositions of law, paraphrasing the issues for review as presented in appellees' brief, are correct general principles of law:
A DEVELOPER-DECLARANT MAY RESERVE THE RIGHT, IF CLEARLY EXPRESSED AND PRESERVED IN THE ORIGINAL DOCUMENT, TO ANNUL, CANCEL OR MODIFY RESTRICTIVE COVENANTS RUNNING WITH THE LAND, AND THE EXERCISE OF THAT RIGHT MAY BE DELEGATED TO ITS DESIGNATED REPRESENTATIVE.
RESERVATIONS AND RESTRICTIONS ARE TO BE CONSTRUED FREELY WITHIN THE INTENT OF THE PARTIES TO AVOID UNDUE HINDRANCE TO THE FREE USE OF REAL PROPERTY.
The following statement, paraphrasing the issues as presented by appellants for resolution by this court, is also a correct general principle of law:
THE LEGAL RIGHT OF AN OWNER DEVELOPER, CLEARLY PRESERVED IN THE ORIGINAL DOCUMENT AND DELEGATED TO A DESIGNATED REPRESENTATIVE, TO ANNUL, CANCEL OR MODIFY RESTRICTIVE CONVENANTS RUNNING WITH THE LAND IS NOT UNLIMITED, AND WHERE PURCHASERS HAVE RELIED UPON THE ORIGINAL RESTRICTIONS, ACTIONS OF THE DESIGNATED REPRESENTATIVE MAKING ANY SUCH CHANGES MUST BE REASONABLE, NOT ARBITRARY OR CAPRICIOUS, AS WELL AS CONSISTENT WITH PERPETUATION OF THE ORIGINAL COMMON SCHEME OF DEVELOPMENT, AND THE RESTRICTIONS CREATE EQUITABLE EASEMENTS IN FAVOR OF THE OWNERS OF THE SEVERAL LOTS THAT MAY BE ENFORCED, IN EQUITY, BY ANY OF THOSE LOT OWNERS.
*1121 Appellees, in support of the action of the trial court, rely heavily upon three decisions of this court and one of the Maryland Court of Appeals: Schmidt v. Ladner Construction Co., Inc., 370 So.2d 970 (Ala.1979); Laney v. Early, 292 Ala. 227, 292 So.2d 103 (1974); Thrasher v. Bear, 239 Ala. 438, 195 So. 441 (1940); Matthews v. Kernewood, 184 Md. 297, 40 A.2d 522 (1945). The latest of these cases is Schmidt. In that case, in which the author of this opinion joined the dissent of Chief Justice Torbert, the majority stated: "... The broader question of the legal right of a declarant to modify restrictive covenants running with the land, if such is clearly preserved in the original document, is not the issue here presented...." (Emphasis added.) It was also stated: "... Nothing herein should be construed as an expression of an opinion upon any issue beyond the narrow question of ambiguity here presented." (Emphasis added.) More importantly, however, the proposed modifications under scrutiny in that case neither annulled, nor were inconsistent with, the general scheme or plan of development for the subdivision or its residential use purpose.
As for Laney, that holding denied relief to an owner of several lots in a subdivision who sought to have restrictions for residential use only removed in order that he might construct buildings for commercial purposes. Relief from the restrictions was not sought on the basis of a reserved right to repeal or modify them, but rather was requested on the equitable theory that changed conditions in the neighborhood had impaired the benefits to the owners from the covenants and had rendered the restrictions inequitable. We therefore consider the facts and holding of Laney inapposite to the situation which we today appraise.
Turning to the older cases cited by appellees, Thrasher and Matthews, both of these decisions are noted in 4 A.L.R.3d 570 (1965) as authority for the traditional view with respect to a grantor's reservation of the right to revoke or amend restrictive covenants, stated as follows:
"Contractual provisions relating to revocation or modification of covenants restricting the use of real property frequently give the power to amend or terminate the restrictions to the original owner or subdivider of a tract, occasionally with the `consent' of the owner of the particular lots as to which the restrictions are to be revoked or altered. Various problems of interpretation arise in connection with such provisions, but it may be observed, generally, that agreements of this kind are usually regarded as personal covenants which can be exercised only by the one who imposed the restrictions originally and, in some instances, by his successors. The existence of this reserved right in the original owner has usually been regarded as negativing any suggestion that the restrictions were imposed with the intention of creating a general or neighborhood plan of development for the benefit of all of the owners in the area. Likewise, where the owner imposed the restrictions and reserved to himself the right to amend or nullify them, it has been held that he was under no obligation to restrict, in any manner, other lands owned by him in the area, irrespective of whether or not they were later sold."
4 A.L.R.3d at 573-574.
It is important to note that this view is premised on the notion that restrictive covenants accompanied by the retained right in the grantor to revoke or amend them are personal in nature, as opposed to covenants running with the land. The rationale for considering these covenants personal in nature is that the reservation in the grantor of the power to revoke or amend destroys the mutuality or reciprocity of the restrictions. Gibney v. Stockdale Corp., 20 Del.Ch. 272, 174 A. 117 (1934); Suttle v. Bailey, 68 N.M. 283, 361 P.2d 325 (1961); Brighton by the Sea v. Rivkin, 201 A.D. 726, 195 N.Y.S. 198 (1922).
In the approximately 40 years since Thrasher and Matthews were decided, several courts, including this one, have adopted a more enlightened and realistic perspective *1122 when reviewing transactions between land developers and individual lot purchasers involving restrictive covenants. Most marked for our purposes is the following recitation from Hall v. Gulledge, 274 Ala. 105, 145 So.2d 794 (1962):
"In Scheuer v. Britt, 218 Ala. 270, 118 So. 658, we quoted with approval the following from 4 Thompson on Real Prop., § 3398:
"`"Where the owner of a tract of land adopts a general scheme for its improvement, dividing it into lots, and conveying these with uniform restrictions as to the purposes for which the lands may be used, such restrictions create equitable easements in favor of the owners of the several lots, which may be enforced in equity by any one of such owners. Such restrictions are not for the benefit of the grantor only, but for the benefit of all purchasers. The owner of each lot has as appurtenant to his lot a right in the nature of an easement upon the other lots, which he may enforce in equity.
"`"Whether such restriction creates a right which inures to the benefit of purchasers is a question of intention, and to create such right it must appear from the terms of the grant, or from the surrounding circumstances, that the grantor intended to create an easement in favor of the purchaser."'
"We further stated:
"`In such cases the equitable right to enforce such mutual covenants is rested on the fact that the building scheme forms an inducement to buy, and becomes a part of the consideration. The buyer submits to a burden upon his lot because of the fact that a like burden is imposed on his neighbor's lot, operating to the benefit of both, and carries a mutual burden resting on the seller and the purchasers.' [Emphasis in original.]
". . . .
"Quoting from an earlier case (McMahon v. Williams, 79 Ala. 288, p. 291) we again approved the above principal [sic] in the following language:
"`"One of the most practical tests, supported by common sense and common business experience, is, whether the restriction imposed by the grantor or proprietor upon the granted premises would naturally operate to enhance the value of his adjacent premises, whether retained by him or conveyed to another. If this be so, it is a strong circumstance to indicate that the restriction was not intended for the mere personal benefit of the grantor, but as a permanent servitude beneficial to the owner of the land, whoever he may be, and appendant to the premises. * * * The inquiry, in these cases, has generally been, whether the servitudes or restrictions imposed were of such a nature as to operate as an inducement to purchasers; and, if so, the inclination of the courts has been to construe them as appurtenant to the estate, and intended for its protection, rather than personal to the grantor. If appurtenant, it of course follows the land, being assignable with it, and each grantee can enforce it in equity against each other grantee having notice of it."' Virgin v. Garrett, supra. [233 Ala. 34, 169 So. 711].
"Appellees contend that the reservation by the grantor of the right to change or modify the restrictions as to any lot in Redmont Park negates any intention to benefit the lands of other owners. We cannot agree with this contention. To do so would be to construe this language as indicative of his intention to the exclusion of all other language in the deed and all surrounding circumstances. We have in the past given effect to restrictions contained in deeds at the instance of grantees of lots in subdivisions where the grantor had expressly reserved the right to waive, release or annul the restrictions contained in the plot and conveyance. Thrasher v. Bear, 239 Ala. 438, 195 So. 441. It seems to us that the power to change the restrictions is only one factor to be considered in determining the intention of the grantor to give the right of enforcement of the restrictions. All language of the deed should be considered in arriving at the grantor's intention." (Emphasis added.)
*1123 The holding of Hall v. Gulledge was noted with approval, as the modern view, by our sister state of Florida in Loch Haven Homeowners' Ass'n, Inc. v. Nelle, 389 So.2d 697 (Fla.App.1980); wherein that court said:
"... Courts initially viewed the reservation of a power to amend restrictions as negating the existence of a general scheme or plan of development and, accordingly, held that restrictions subject to such a reserved power are not enforceable by one remote grantee against another....
"The more modern judicial attitude and the one we adoptis that the reservation of the right to amend restrictions is only one factor to be considered in determining whether the grantor intended to establish a uniform plan of development, and that all language of the restrictions should be considered in arriving at the grantor's intention. Hall v. Gulledge, 274 Ala. 105, 145 So.2d 794 (1962). [Other citations omitted.]"
In another case from that jurisdiction, Flamingo Ranch Estates, Inc. v. Sunshine Ranches Homeowners, Inc., 303 So.2d 665 (Fla.App.1974), the Florida court was faced with a fact situation almost identical to that which we confront in this case. The successor to the original developer of a residential subdivision sought to amend restrictive covenants, initially imposed to insure "the development of the lands as a residential area of high standards," to permit a portion of the property to be used for business purposes. Amendment of the restrictions was attempted by virtue of a clause in the conveying instruments which reserved to the developer the right to alter, amend, repeal or modify them at any time, in its sole discretion. On appeal, the court did not step as far as the trial court, which had declared the reservation of the right to amend null and void, but rather adopted a more reasonable and equitable position, which we approve. It is stated thus:
"In the case of Johnson v. Three Bays Properties #2, Inc., Fla.App.1964, 159 So.2d 924, at 925, 4 A.L.R.3d 565, the court, though not squarely faced with the issue, stated in a footnote:
"`1. It is well recognized that where a grantor reserves the right to alter, modify or change restrictive covenants, he may do so without the consent of the grantee. 14 Am.Jur., Covenants, Conditions and Restrictions, § 292; 26 C.J.S. Deeds § 168. See also Matthews v. Kernewood, Inc., (1945), 184 Md. 297, 40 A.2d 522; Bright v. Forest Hill Park Development Co., (1943), 133 N.J. Eq. 170, 31 A.2d 190; Thrasher v. Bear, (1940), 239 Ala. 438, 195 So. 441.'
"In the cited case, the court also stated in its opinion, however, a recognized limitation on this right in the following language:
"`Appellants are entitled to protection against an unreasonable diminution of the building requirements of the subdivision....' [Emphasis supplied in Flamingo.]
"As stated in 7 Thompson, Real Property, Section 3171, at 188:
"`A court of equity will not enforce restrictions where there are circumstances that render their enforcement inequitable....'
"In a sense, there is an inherent inconsistency between an elaborate set of restrictive covenants designed to provide for a general scheme or plan of development (generally considered to be for the benefit of the respective grantees), and a clause therein whereby the grantor reserves to itself the power at any time in its sole discretion to change or even arbitrarily abandon any such general scheme or plan of development (a power which is solely for the benefit of the grantor). When such occurs, as it has in this case, rules of construction require that clauses which are apparently inconsistent with or repugnant to each other be given such an interpretation and construction as will reconcile them, if possible. 7 Fla.Jur., Contracts, Section 91.
"In the instant case, this can be done by reading into the reservation clause a requirement of reasonableness, much as *1124 suggested by the court in Johnson v. Three Bays Property, supra. We hold, therefore, that the clause in the Declaration of Restrictions, which reserves to the owner `the right to alter, amend, repeal or modify these restrictions at any time in its sole discretion' is a valid clause so long as it is exercised in a reasonable manner as not to destroy the general scheme or plan of development." (Emphasis added.)
303 So.2d at 666.
The recorded declaration, in the case at hand, contained the provision that "[s]aid covenants, restrictions, and limitations shall run with the land and be binding on all parties and all persons claiming under them ...." Although the technical language employed in the conveying instrument is not controlling in an equitable inquiry, as the one in which we are here engaged, the assertion in such an instrument that restrictive covenants are to run with the land has been cited as a significant factor in determining that a grantor intended a general scheme or plan of development, so that he could only amend the restrictions in a reasonable manner consistent with that scheme or plan, despite broad language in the clause reserving to the developer the right to amend, modify or repeal the restrictions. Golian v. Polhironakis, 390 So.2d 187 (Fla.App.1980). See also Hall v. Gulledge, supra.
Furthermore, the uncontroverted evidence advanced by plaintiffs was that they were induced by, and relied upon, the restrictive covenants when purchasing their respective lots in Cypress Shores, and construction of a convenience store on Lot 46 would result in a significant reduction in value of those lots.
Given these facts, we conclude that the declaration of "Covenants, Restrictions and Limitations" recorded by Cypress Shores Development Company, in light of the surrounding circumstances, was intended by the company to create a general scheme or plan of development with restrictions benefiting all owners of land within Cypress Shores.
We further note that the Architectural Control Committee, in which the right to annul, cancel, modify or amend is reserved, is comprised only of officers of the developing company, and will continue to be so constituted under the terms of the recorded declarations. Viewed realistically, the actions of the Committee are, no more or less, actions of the developer and are treated as such in this case. However, even where an architectural control committee is not the alter ego of the developer, the exercise of its powers has been held subject to a standard of reasonableness. In 4626 Corporation v. Merriam, 329 So.2d 885 (La.App. 1976), the court stated:
"Since the subdivision's founders did not choose to limit the power of the committee by setting forth guidelines or standards, the inference is that the validity of the committee's enforcement of the restrictions must be judged by the reasonableness of its actions."
Having determined from the recorded declaration of "Covenants, Restrictions and Limitations," and from the surrounding circumstances, that Cypress Shores Development Company intended to create a general scheme or plan or development for Cypress ShoresUnit Four (Subdivision), we hold the reservation of the right to annul, cancel, amend or modify the restrictive covenants could only be exercised by the Architectural Control Committee in a reasonable manner consistent with that general scheme or plan of development. Amendment or cancellation of the restrictions so as to permit the construction of a convenience store on Lot 46 was, we hold, an unreasonable exercise of the Committee's authority and highly inconsistent with the general scheme or plan of development upon which plaintiffs relied when purchasing their lots, and was therefore null and void. Accordingly, the judgment of the trial court is due to be and is hereby reversed and this case remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
*1125 FAULKNER, JONES, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C. J., and MADDOX, J., dissent.
TORBERT, Chief Justice (dissenting).
Appellants "by virtue of becoming [an] owner [`in that certain subdivision known as `Cypress Shores' and being designated as UNIT NO. 4'] ... agree[d] with Declarants [Appellees] ... that the following covenants, restrictions and limitations shall apply to said subdivisions ....:
"1. Use. All lots in said subdivision shall be known and designated as residential lots ... [and the Architectural Control Committee] may waive any one or more of the covenants, restrictions, limitations or requirements herein specified by an instrument in writing signed and acknowledged by a majority of the members comprising such committee ...."
This agreement by the parties bound both the appellants and appellees to the restrictive covenant and the waiver process. The majority opinion allows appellants to overrule a decision by the Architectural Control Committee, contrary to this agreement, because the majority believes that the committee's actions were unreasonable. While the ambiguity of the clause establishing the waiver process was held to be a proper basis for judicial review in Schmidt v. Ladner Construction Co., 370 So.2d 970 (Ala.1979), it is my view that the "reasonableness" of the committee's decision because of its contractual nature should not be the basis for review by a court:
"The grantor of parcels in a land development has the right, by appropriate provisions in conveyances, to reserve to himself the power to deal freely with restrictions in succeeding conveyancesto vary, modify or omit them altogether. Where a grantor does reserve such right to alter, modify, or change restrictive covenants, he may amend the covenants without the consent of the grantee, and under a provision authorizing a subdivider, in its sole discretion, to modify, amend, or add to restrictive covenants, the subdivider can adopt new covenants that are either more or less restrictive than the original covenants. A grantor's retention of the right to make exceptions to the restrictions imposed is valid, and hence grantees who purchased with notice of such right cannot complain when exceptions are made pursuant to the powers retained; that is, after a waiver or modification of the restrictions by the grantor, they are no longer enforceable, or are no longer enforceable in their original form, as the case may be."
20 Am.Jur.2d Covenants, Conditions, & Restrictions § 270 (1965) (footnotes omitted). See, Matthews v. Kernewood, Inc., 184 Md. 297, 40 A.2d 522 (1945).
This Court has previously upheld the modification of a restrictive covenant where the grantor expressly reserved all of his rights and those of his personal representatives to waive, release or annul the restrictions contained in the conveyance. Thrasher v. Bear, 239 Ala. 438, 195 So. 441 (1940). While the majority relies on Hall v. Gulledge, 274 Ala. 105, 145 So.2d 794 (1962), to support its decision, a careful reading of Hall reveals that this Court was discounting the argument by the grantor that the grantees had no standing to enforce restrictive covenants. There was no evidence presented that the grantors followed any modification or alteration of the restrictive covenants procedure as set out in the original conveyance. The only issue was the standing of the grantees to enforce restrictive covenants against subsequent grantors; thus, reliance on the case to support the majority opinion is misplaced.
In Callahan v. Weiland, 291 Ala. 183, 279 So.2d 451 (1973), the successor to the grantor relinquished its right to waive, modify or annul restrictive covenants contained in deeds theretofore conveying lots. Thus, when the grantor's successor tried to erect a condominium when buildings of this type were restricted by deed, this Court allowed the grantees to enforce the restriction. The relinquishment of the rights by the grantor's successor was the focal point of the *1126 Court's decision; there was no indication that the same result would have been reached if the successor's rights had not been waived.
None of our cases supports the "reasonableness test" implemented by the majority. Instead, our cases support the proposition that if a grantor waives a restriction pursuant to a reservation of this power in the deed, this waiver is valid and binding on the parties. Because the majority departs from upholding a valid exercise of contractual power, I must dissent.
MADDOX, J., concurs.