Billy B. Davis, Revon Tidwell, and Wendell Baker sued James C. Carpenter, seeking to compel Carpenter's compliance with certain restrictive covenants that had been recorded concerning the construction of homes in the Lake Home Subdivision in Geneva County. Carpenter filed a third-party complaint and various counterclaims. Carpenter moved for a summary judgment on the complaint, which the trial court denied. The plaintiffs moved for a summary judgment, which the trial court granted. The court held that Carpenter had violated the provisions of the restrictive covenants, and it permanently enjoined Carpenter from "residing [in], selling or transferring [his] dwelling . . . until such time as he is in compliance with the restrictive covenants." The trial court made the summary judgment final pursuant to Rule 54(b), Ala.R.Civ.P. Carpenter appeals, arguing that the trial court erred in holding, as a matter of law, that Carpenter had violated the restrictive covenants of the subdivision and in permanently enjoining him from "residing [in], selling, or transferring [his] dwelling" until he had complied with the restrictive covenants.
The plaintiffs are all homeowners in the Lake Home Subdivision. Before the development of the subdivision, restrictive covenants were placed on the size of the dwelling that could be erected on each lot in the subdivision. Those covenants were filed on August 25, 1969. Carpenter acquired a deed to his lot on July 14, 1995, and duly recorded it on that same day. Thereafter, he started construction, and on August 16, 1995, while construction was still ongoing, Carpenter was notified by certified mail that his construction was not in compliance with certain restrictive covenants — specifically, that the dwelling he was constructing contained less than 1150 square feet. The house was completed in October 1995; it consists of a heated area of 634 square feet, a storage room of 32 square feet, a porch of 169 square feet, and a carport of 696[1] square feet.
The restrictive covenants, as originally recorded, provided, in part, as follows:
 "No dwelling shall be permitted on any lot at a cost of less that Fifteen Thousand ($15,000.00) Dollars, based upon cost levels prevailing on the dates these covenants are recorded, and all dwellings must comply with the minimum specifications of the Federal Housing Administration or Veterans Administration, and shall not be less than Eleven Hundred and Fifty (1150) square feet for a one story building; it being the intention and purpose of this covenant to assure that all dwellings shall be of a quality of workmanship and materials substantially the same or better than that which can be produced on the date these covenants are recorded at the minimum cost stated herein for the minimum permitted dwelling size.
". . . .
 "No dwelling, garage or storage building shall be erected or placed on any lot of said subdivision nearer than Twenty Five (25) feet to the front and rear lines of said lot, and Ten (10) feet from each side thereof. . . .
 ". . . [N]o dwelling shall be erected or placed on any lot of said subdivision which *Page 258 
shall contain more than two (2) family units under the same roof.
 "No structure of a temporary character, trailer, basement, tent, shack, garage, barn, or other outbuildings shall be used on any lot at any time as a residence, either temporary or permanent."
(Emphasis added.)
A summary judgment is appropriate upon a showing that no genuine issue of material fact exists and that the moving party is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P. In reviewing a summary judgment, this Court will view the evidence in the light most favorable to the nonmoving party and will resolve all reasonable doubts against the moving party. Fincher v. Robinson Brothers Lincoln-Mercury, Inc.,583 So.2d 256 (Ala. 1991).
The facts in this case are undisputed; therefore, we will review the trial court's application of the law to those facts to determine whether the plaintiffs were entitled to a judgment as a matter of law.
Although restrictive covenants are valid and will be recognized and enforced when established by contract between the parties involved, Laney v. Early, 292 Ala. 227,292 So.2d 103 (1974), they are not favored in the law and will be strictly construed, with all reasonable doubts resolved in favor of the free and unrestricted use of land and against the restriction. See Ervin v. Deloney Construction, Inc.,596 So.2d 593, 595 (Ala. 1992), in which the Court, setting out the standard for reviewing for restrictive covenants, held that the term " 'dwelling,' as that word is used in the restrictive covenant [at issue in Ervin was] simply another word used to mean a house in which a person or persons reside," and that the slight encroachment of Ervin's swimming pool and pumphouse onto the lot belonging to the adjoining landowner did not constitute the placement of a "dwelling" on that lot within the meaning of the restrictive covenant in that case; see, also Lange v.Scofield 567 So.2d 1299 (Ala. 1990). Where there is no inconsistency or ambiguity within a restrictive covenant, the clear and plain language of the covenant is enforceable by injunctive relief. Dauphin Island Property Owners Ass'n, Inc.v. Kuppersmith, 371 So.2d 31 (Ala. 1979); Spygley v. Miller,356 So.2d 644 (Ala. 1978); Hall v. Gulledge, 274 Ala. 105,145 So.2d 794 (1962).
This Court has not specifically defined the term "dwelling" as it is used in restrictive covenants such as the one at issue in this case. Nevertheless, given the holding in Ervin v.Deloney Construction, supra, we think it apparent that the Court has concluded that the term "dwelling" means a house in which a person or persons reside. Furthermore, considering the restrictive covenants in this case as a whole (some provisions refer only to a "dwelling," while another refers to a "dwelling, garage or storage building"), we think it is readily apparent that the drafters of the covenants did not intend the term "dwelling" to include a garage or a storage building. Otherwise, they would not have delineated, in the alternative, the terms "dwelling, garage or storage building" in one of the provisions.
Because we conclude that neither a carport nor a storage room constitutes a place where one resides and, therefore, that neither can be considered part of the "dwelling," we must also conclude that there is not sufficient square footage for Carpenter's dwelling to comply with the restrictive covenants. (We note that in deciding the issue before us it is not necessary for us to decide whether a porch is part of a "dwelling.") The square footage of the house and its porch, together, is only 803 square feet; therefore, the "dwelling" is necessarily smaller than the area required by the covenants.
The trial court properly entered the judgment for the plaintiffs.
AFFIRMED.
HOOPER, C.J., and MADDOX, KENNEDY, and BUTTS, JJ., concur. *Page 259 
[1] While one document in the record indicates that the carport had 696 square feet, other filings in this case indicate it had 690 square feet.