[No. 36572-3-II.   Division Two.   March 17, 2009.]

FAWN LAKE MAINTENANCE COMMISSION, *Respondent*, v. ALDONS
ABERS ET AL., *Appellants*.

*John Frawley*, for appellants.

*Stephen T. Whitehouse*, for respondent.

¶1 ARMSTRONG, J. — Aldons and Inese Abers appeal a summary judgment action in favor of Fawn Lake Maintenance Commission (FLMC); the Aberses maintain that because they combined their two subdivision lots into one, they are obligated to pay homeowners' dues for only one lot. The Aberses assert that a FLMC representative told them that if they combined their lots, they would pay dues for only one lot; thus, the Aberses reason that the FLMC has either waived its right to collect for two lots or is estopped from doing so. Finally, the Aberses appeal the trial court's award of attorney fees to FLMC. Because the covenants apply to the lots as originally configured, and because the Aberses failed to establish a prima facie case on their estoppel and waiver arguments, the trial court properly ruled that the Aberses must pay dues on two lots. We affirm.

## FACTS

¶2 Fawn Lake is a 510-lot recreational property subdivision in Mason County, Washington. FLMC is the subdi-

vision's nonprofit homeowners' association. In 1968, the Aberses purchased lots three and four, two separate but contiguous lots, from the developer. Fawn Lake lot owners have their own water system, roads, a lake, and gated security. Fawn Lake lot owners are also bound by a set of restrictive covenants, including a declaration of protective restrictions and a declaration of charges, assessments, and liens. These covenants can be amended only by a two-thirds vote of the board of trustees or of the Fawn Lake members in good standing.

¶3 The original covenants, filed in 1968, provide, in part, "Charges and assessments by the Commission shall be levied in equal proportions against each and every residential lot, or in accordance with service rendered directly to each such residential lot. . . ." Clerk's Papers (CP) at 270. This language remains largely unchanged.[1] The governing documents do not expressly define the terms "lot" or "residential lot," but they do describe the subdivision as "[l]ots 1-135, inclusive, Fawn Lake Division No. 6, according to said plat thereof. . . ." CP at 269.

¶4 A number of years ago, the Aberses experienced financial trouble and allege that they contacted FLMC to discuss their situation. The Aberses assert that they met with the FLMC board president,[2] who recommended that they combine their two lots into one. According to the Aberses, the board president explained that if they combined their lots, they would have to pay dues on only one lot and that they would be allowed only one home, one vote, and one set of water rights. The Aberses allege that they received Mason County contact information from the board president's assistant so that they could begin the lot combination process.

¶5 Before 1998, the Aberses paid dues on both lots. On June 4, 1998, the Aberses combined their two lots under a

---

[1] The most recent Fawn Lake bylaws in the record, 2003, use the language "each and every lot." CP at 466.

[2] The Aberses have also identified the individual as "the lady at the desk in the office," CP at 143, and a man who represented FLMC.

Mason County declaration of parcel combination. Mason County subsequently taxed the Aberses for only one lot but warned them that the combination does "not affect the number of lots the applicants own or the number of water assessment fees, etc. . . ." CP at 230-31. The Aberses maintain that after the combination, FLMC provided only one water hookup, one key, and one vote.[3] But FLMC rejected the Aberses' attempt to pay dues for a single lot beginning on July 18, 1998. One hundred seven Fawn Lake lots are in multiple ownership, and fifty-two Fawn Lake lot owners have combined lots. Each owner pays dues for each lot as configured in the original subdivision.

¶6 In December 2001, FLMC brought a declaratory action asking the trial court to determine whether the Aberses should pay homeowners' dues for one or two lots. The trial court granted FLMC's motion for partial summary judgment, ruling that FLMC is entitled to assess dues based on the lots as originally configured, that the Aberses could not unilaterally modify the covenant, and that FLMC relied on the original configuration for their dues assessment structure. The trial court denied the Aberses' cross-motion for summary judgment. Later, the trial court granted FLMC's motion for summary judgment on the remaining claims and granted FLMC attorney fees and costs.

## ANALYSIS

### Motion for Partial Summary Judgment on Lot Dues

¶7 The Aberses maintain that the trial court erred in granting FLMC's motion for summary judgment, contending that they owe only one set of homeowner's dues because they combined their lots.

---

[3] The Aberses further allege that FLMC accepted dues for a single lot, but the record shows that the FLMC consistently rejected the Aberses' attempts to pay for only one lot.

## A. Standard of Review

¶8 We review a summary judgment de novo. *Go2Net, Inc. v. FreeYellow.com, Inc.*, 158 Wn.2d 247, 252, 143 P.3d 590 (2006) (citing *Troxell v. Rainier Pub. Sch. Dist. No. 307,* 154 Wn.2d 345, 350, 111 P.3d 1173 (2005)). Summary judgment is appropriate where no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. CR 56(c). In considering a summary judgment motion, we view all facts and reasonable inferences from those facts in the light most favorable to the nonmoving party. *Berrocal v. Fernandez*, 155 Wn.2d 585, 590, 121 P.3d 82 (2005) (citing *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982)). The moving party bears the burden of demonstrating that there is no genuine issue of material fact. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). "If the moving party satisfies its burden, the nonmoving party must present evidence that demonstrates that material facts are in dispute." *Atherton*, 115 Wn.2d at 516. If the nonmoving party fails to do so, then summary judgment is proper. *Atherton*, 115 Wn.2d at 516.

## B. Definition of "Lot" under the Covenant

¶9 The Aberses maintain that they own only one residential[4] lot subject to the covenants because they filed a Mason County declaration of combination in 1998. We disagree.

¶10 First, although the term "lot" is not defined in the Fawn Lake covenants, the initial governing documents describe the subdivision as "[l]ots 1-135, inclusive, Fawn Lake Division No. 6, according to said plat thereof. . . ." CP

---

[4] The Aberses contend that the term "residential" requires this court to define the term "lot" based on the number of homes that may be built on a lot. But the initial governing documents state that each lot "shall be used for residential purposes only." CP at 264. Thus, the term "residential" is an adjective that applies to all property in Fawn Lake and does not provide any guidance to this court in defining an individual "lot."

at 269. The documents explicitly state that all provisions of the declaration of charges, assessments, and liens are "covenants and obligations running with the land." CP at 271. The "land" subject to the covenants includes each of the 135 lots created by the 1968 subdivision. That the Aberses paid dues on both lots three and four until 1998 also shows that they understood that the fee assessment covenants attached to each lot as originally configured.

¶11 A North Carolina court has considered the same issue on essentially the same facts and concluded that the land owner owed dues on two lots, even though the owner purchased one combined lot. *Claremont Prop. Owners Ass'n v. Gilboy*, 142 N.C. App. 282, 542 S.E.2d 324 (2001). Like the covenant at issue here, the covenant in *Claremont* assessed dues equally based on the number of lots owned and stated that the covenants shall run with the land. *Claremont*, 542 S.E.2d at 325. The court in *Claremont* held that a subdivision's restrictive covenants "attach to each individual lot at the moment the subdivision becomes subject to the covenants." *Claremont*, 542 S.E.2d at 328. Like the two recorded plats in *Claremont*, the recorded Fawn Lake subdivision map depicts the Aberses' lots as two separate lots. *Claremont*, 542 S.E.2d at 326; CP at 235. We agree with the *Claremont* court's reasoning; the term "lot" in the charges and assessments covenant attached to each lot as originally configured.

¶12 Moreover, the covenant's purposes support the conclusion that the Aberses' property remains two distinct subdivision lots. When a dispute arises between a land owner and the other owners in a subdivision, courts interpret covenants in a way that "place[s] 'special emphasis on arriving at an interpretation that protects the homeowners' collective interests.'" *Riss v. Angel*, 131 Wn.2d 612, 623-24, 934 P.2d 669 (1997) (quoting *Lakes at Mercer Island Homeowners Ass'n v. Witrak*, 61 Wn. App. 177, 181, 810 P.2d 27 (1991)). We do not apply rules of strict construction; rather, we determine a covenant's intent by looking to the purposes sought to be accomplished by it. *Riss*, 131 Wn.2d

at 623; *Lakes*, 61 Wn. App. at 180. Here, the Fawn Lake charges and assessments covenant provides benefits to each and every lot, including roads, a lake, water service, gate security, and other operating expenses. Presumably, the developer intended active use of each lot in the subdivision. The *Claremont* court recognized that at the time a subdivision is created, each lot owes to the rest of the lots the duty to observe the covenants. *Claremont*, 542 S.E.2d at 327. Upholding a duty to pay dues on every lot in the original configuration here protects the homeowners' collective interests because each owner pays for benefits in proportion to the amount of property he or she owns.

¶13 Significantly, certain Fawn Lake covenants apply to property owners based on their "membership," rather than the number of lots owned. Thus, the drafters of the governing documents contemplated applying certain covenants based on membership but specifically chose to apply the charges and assessments covenant to the number of lots owned, not membership.

¶14 The original subdivision configuration and the Aberses' payment of two sets of dues until 1998 show that the obligation to pay dues attached to both of their lots individually under the covenant. Consequently, we next decide whether the Mason County declaration of combination altered the covenant between the Aberses and FLMC.

C. Effect of 1998 Mason County Declaration of Combination

¶15 The Aberses assert that because Mason County recognizes the property as one lot for tax purposes, they should pay homeowner dues on only one lot. We disagree.

¶16 FLMC reasons that the Aberses did not legally create one lot from two because they did not comply with RCW 58.17.215 (setting forth procedures to alter a subdivision plat) and Mason County Code (M.C.C.) 16.40.040 (establishing boundary line adjustment procedure to create new lot). *Cf.* M.C.C. 16.40.045 (Mason County began to

recognize lot combinations in 2003). But these provisions do not apply here.

¶17  RCW 58.17.215 requirements do not apply to divisions that merely "adjust[ ] boundary lines" and do "not create any additional lot, tract, parcel, site, or division . . . ." RCW 58.17.040(6). Because the Aberses do not seek to create an *additional* lot, they were not required to follow the process set forth in RCW 58.17.215. RCW 58.17.040(6). The later ordinance provides for adjusting boundary lines where no additional lots are created, but this is a more formal procedure that the Aberses did not go through. The Aberses' declaration procedure was not intended to irrevocably turn two lots into one because until 2002, it could be reversed. Most importantly, the county advised the Aberses that removing the lot dividing line by declaration "[did] not automatically change the number of lots fees or water hookup fees [ ] property owners are assessed for and that applicants should see their home owners [sic] association or water provider for details." CP at 230. Rather, the purpose of the declaration procedure was to combine two contiguous lots so the owner could build across the line.

¶18  The Aberses cannot unilaterally modify their contract with FLMC through an arrangement with a third party, in this case, Mason County. *See Dragt v. Dragt/ DeTray, LLC*, 139 Wn. App. 560, 571, 161 P.3d 473 (2007) (holding that contract modification requires meeting of the minds and separate consideration), *review denied*, 163 Wn.2d 1042 (2008). Because the dues covenants apply to the entire subdivision, modifying the covenants in a way that decreases the Aberses' dues would increase the burden on every other owner. The court in *Claremont* recognized that although lots may be combined for ownership or convenience, the owner must always conform to the covenants that attached to the original property. *Claremont*, 542 S.E.2d at 328. Although the Aberses combined their lots for tax and building convenience, their agreement with Mason County did not modify their obligations under the Fawn Lake covenants. *See Claremont*, 542 S.E.2d at 328

(homeowners' agreement with third party to remove the boundary line between the two lots "did not alter or negate the real covenants that had previously attached to each lot").

## D. Reasonableness of FLMC's Fee Assessment Structure

¶19 Under this definition of "lot," we next consider whether FLMC's decision to assess dues on a per lot basis was reasonable. The Aberses do not contest that they are bound by the Fawn Lake covenants or that FLMC has authority to make charges and assessments to support the subdivision, but they do challenge the dues structure. They contend that the charges should be assessed "in accordance with service rendered directly to each such residential lot." Br. of Appellant at 9, 10. We disagree.

¶20 Members of a homeowners association are bound by the sound exercise of the governing body's discretion in exchange for the benefits they receive from the association. *Panther Lake Homeowner's Ass'n v. Juergensen*, 76 Wn. App. 586, 589-90, 887 P.2d 465 (1995) (quoting *Rodruck v. Sand Point Maint. Comm'n*, 48 Wn.2d 565, 577, 295 P.2d 714 (1956)). But the association's decisions must be reasonable. *Riss*, 131 Wn.2d at 632.

¶21 Fawn Lake's bylaws state that "[a]nnual assessments will be charged *equally for all lots* as set by the Board of Trustees." CP at 347 (emphasis added).[5] A plain reading of the following phrase shows that the bylaws give FLMC two alternatives on how to assess fees: "Charges and assessments set by the Commission . . . shall be . . . levied in equal proportions against each and every residential lot, or in accordance to services rendered directly to each such residential lot. . . ." CP at 347 (emphasis omitted).[6] Even if the Aberses use only one set of FLMC services, FLMC is not required to base its homeowners' fee assessment on the

---

[5] The 1995 bylaws were in effect at the time the Aberses combined their lots in 1998.

[6] The 1968 governing documents use the same relevant language.

"services rendered." The "or" in the charges and assessments provision gives FLMC discretion to choose one of two ways to levy charges, and it chose the option of levying against each lot. The FLMC's decision to assess dues on a per lot basis was reasonable.

¶22 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HOUGHTON and HUNT, JJ., concur.

Review denied at 166 Wn.2d 1014 (2009).