MOORE, Judge.
Robert Diercks and Carin Diercks appeal from a judgment entered by the Escambia Circuit Court ("the trial court") determining that they had breached the restrictive covenants applicable to residential lots located in the Second Alexander Heights Subdivision ("the subdivision") and enjoining the Dierckses "from further or additional construction of [a certain accessory building] located on Lot 58" and "[requiring] the [Dierckses] to remove the [building] from Lot 58." We reverse the trial court's judgment.
Procedural History
On February 18, 2015, certain owners of real property in the subdivision, specifically, Phillip D. Odom, Lynda Joy Odom, James Steven White, Gregory Wayne White, Kimberly Gibson White, Jason R. Castleberry, and Renee P. Ryan ("the plaintiffs"), filed a complaint against the Dierckses, alleging that the Dierckses *217 had begun construction on an accessory building ("the structure") on lot 58 in the subdivision that was in violation of the restrictive covenants applicable to the subdivision. The plaintiffs requested the trial court to order the Dierckses to stop construction of the structure and to return lot 58 to its previous condition. On May 7, 2015, the Dierckses answered the complaint.
On February 4, 2016, the plaintiffs filed a motion for a summary judgment. On April 29, 2016, the Dierckses responded to the summary-judgment motion. The trial court entered a summary judgment in favor of the plaintiffs on May 6, 2016. On June 5, 2016, the Dierckses filed a postjudgment motion; that motion was denied on July 26, 2016. On September 6, 2016, the Dierckses filed their notice of appeal.
Facts
The trial court set out the undisputed facts in its judgment as follows:
"1. The parties to this action are owners of real property located within the [subdivision].
"2. [The restrictive covenants] were adopted with reference to the real property located within the subdivision and were recorded on April 3, 1986, in Deed Record 452, page 574, in the office of the Judge of Probate of Escambia County, Alabama.
"3. The [Dierckses] purchased Lot 47 in the subdivision by deed dated December 9, 1993....
"4. The [Dierckses] purchased Lot 58 in the subdivision by deed dated July 15, 2010....
"5. At the time the [Dierckses] purchased Lots 47 and 58 in the subdivision, the [Dierckses] had actual or constructive notice of the [restrictive] covenants.
6. The [Dierckses'] dwelling house in which they reside is located on Lot 47 in the subdivision.
7. Lot 58 had no improvements located thereon at the time the [Dierckses] purchased the lot.
"8. The [Dierckses] commenced construction of [the] structure on Lot 58 in October 2014[,] which the [Dierckses] describe as an accessory building.
"9. The structure which the [Dierckses] started constructing on Lot 58 is the only improvement the [Dierckses] intended to construct on Lot 58 and is the only improvement located on Lot 58 as of the present date.
"10. There is no family dwelling located on Lot 58.
"11. The front of Lot 58 faces onto Brooks Boulevard in the subdivision.
"12. The carport or garage of the structure on Lot 58 opens onto or faces toward the front of Lot 58.
"13. The structure on Lot 58 when completed would not contain a minimum of 1,700 square feet of living space exclusive of a carport or garage and/or open porches attached to the structure.
"14. The zoning ordinances of the City of Brewton, Alabama prohibit detached accessory buildings in excess of 15 feet in height and provide that a detached accessory building shall not be located on a lot by itself.
"15. The structure on Lot 58 exceeds 15 feet in height and is located on a lot by itself.
"16. The front building line of Lot 58 is 78.5 feet in width.
"....
"18. By deed dated May 29, 2014, and recorded at Official Record Book 577, pages 271-274, in the office of the Judge of Probate of Escambia County, Alabama, the [Dierckses] conveyed Lots *218 47 and 58 in the subdivision to themselves in a combined metes and bounds description, subject to the [restrictive] covenants."
The restrictive covenants provide, in pertinent part:
"That Hines Realty Company, Inc., a corporation, the owner of [the subdivision], as shown by plat of said subdivision recorded in Plat Book 5, Page 153, in the Office of the Judge of Probate of Escambia County, Alabama, do hereby adopt the following [restrictive c]ovenants with reference to the property located in said subdivision.
"1. Land Use and Building Type.
"A. Single family dwellings only and accessory structures customarily incidental to this use.
"....
"C. The carports and garages must not open on or face toward the front of the lot.
"2. Size and Location of Structure.
"A. Dwelling house to contain a minimum of 1,700 square feet of living space exclusive of carport, garage and/or open porches.
"B. House to be located on lot in accordance with zoning regulations of the City of Brewton, Alabama.
"3. Building lot to be a minimum of 100 feet in width at the front building line with the exception of # 17, # 13, and # 27."
The trial court concluded that the Dierckses' conveyance to themselves of lots 47 and 58 did not "avoid the application of the [restrictive] covenants to Lot 58." It further concluded that the structure on lot 58 violated "paragraphs 1.A., 1.C., 2.A., 2.B., and 3 of the [restrictive] covenants."
Standard of Review
" 'We review this case de novo, applying the oft-stated principles governing appellate review of a trial court's grant or denial of a summary judgment motion:
" ' "We apply the same standard of review the trial court used in determining whether the evidence presented to the trial court created a genuine issue of material fact. Once a party moving for a summary judgment establishes that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating a genuine issue of material fact. 'Substantial evidence' is 'evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' In reviewing a summary judgment, we view the evidence in the light most favorable to the nonmovant and entertain such reasonable inferences as the jury would have been free to draw." '
" American Liberty Ins. Co. v. AmSouth Bank, 825 So.2d 786, 790 (Ala. 2002) (quoting Nationwide Prop. & Cas. Ins. Co. v. DPF Architects, P.C., 792 So.2d 369, 372 (Ala. 2000) (citations omitted))."
General Motors Corp. v. Kilgore, 853 So.2d 171, 173 (Ala. 2002).
Discussion
On appeal, the Dierckses first argue that the restrictive covenants do not prohibit them from combining two adjacent lots in the subdivision into one lot; they posit that, when the lots are considered as one combined lot, the combined lot is not in violation of the restrictive covenants.
*219 " 'Restrictive covenants are to be construed according to the intent of the parties in the light of the terms of the restriction and surrounding circumstances known to the parties. [ Virgin v. Garrett, 233 Ala. 34, 169 So. 711 (1936) ; Chattahoochie & Gulf Railway Co. v. Pilcher, 163 Ala. 401, 51 So. 11 (1909).]
" 'Restrictions against the free use and enjoyment of property are not favored in law and such restrictions are to be strictly construed. [ Springdale Gayfer's Store Co. v. D.H. Holmes Co., 281 Ala. 267, 201 So.2d 855 (1967) ; Bear v. Bernstein, 251 Ala. 230, 36 So.2d 483 (1948) ; Virgin v. Garrett, supra. ]' "
Marengo Hills, Inc. v. Watson, 368 So.2d 856, 858 (Ala. 1979) (quoting Kennedy v. Henley, 293 Ala. 657, 663, 309 So.2d 435, 439 (1975) ).
Both parties have discussed at length Marengo Hills, the case on which the plaintiffs relied in support of their summary-judgment motion. In Marengo Hills, like in the present case, certain landowners attempted to combine two adjacent lots into one lot; the landowners constructed a residence on one of the lots and thereafter began constructing a 50-foot by 24-foot garage on the second lot. Id. The subdivision developer filed a complaint against the landowners, alleging that the construction of the garage violated restrictive covenants that were applicable to the second lot. Id. Unlike the present case, however, the restrictive covenants at issue in Marengo Hills included a provision stating:
" 'Nothing herein contained shall prevent a purchaser from purchasing two or more adjoining lots for the purpose of constructing a dwelling on the composite area thereof, in which event the entire area shall be treated as one residential building lot for the purpose of these restrictive covenants; provided, however, that after construction of a dwelling on any such composite residential building lot, the owner thereof may not sell any one of the lots as originally laid out, separately from the others, unless the dwelling located on the remaining lot or lots complies in all respects with the provisions of Item 3 hereof [regarding distances between structures and the lot lines].' "
Marengo Hills, 368 So.2d at 857 (emphasis omitted). Our supreme court reasoned that "[t]he purchase of two adjoining lots and the treatment of the entire area as one residential lot is ... expressly sanctioned in Covenant (4), therefore the intent of the parties should be given effect." 368 So.2d at 858.
Marengo Hills is distinguishable from the present case because, in this case, there is no provision in the restrictive covenants authorizing or prohibiting the combining of two lots into one single lot. However, our supreme court, in Hoffman v. Tacon, 293 Ala. 684, 309 So.2d 817 (1975), considered the issue whether a landowner's subdivision of his lot to create two lots violated the restrictive covenants applicable to the original lot. In addressing the issue, our supreme court found it noteworthy that "[t]here is no restriction [in the restrictive covenants] which prohibits specifically the subdivision of a lot." 293 Ala. at 685, 309 So.2d at 818. The supreme court concluded that the trial court in that case had correctly determined that the subdivision of the lot was not prohibited so long as the subdivided lots remained subject to the restrictive covenants. See also Tanglewood Homes Ass'n, Inc. v. Feldman, 436 S.W.3d 48, 67 (Tex. App. 2014) (holding that landowner could combine adjacent lots into one lot when restrictive covenants did not expressly forbid such action).
Relying on our supreme court's reasoning in Hoffman and the general consideration that restrictive covenants must be *220 strictly construed, we conclude that the restrictive covenants at issue in the present case do not prevent the Dierckses from combining their two adjacent lots into one lot, with the combined lot remaining subject to the restrictive covenants. In its judgment, the trial court, primarily by treating lot 58 as a separate lot from lot 47 and by viewing the structure as the lone structure on lot 58, determined that the structure violated the restrictive covenants. However, as we have held, the Dierckses validly combined the lots, and the question for adjudication should have been whether the construction of the structure on the combined lot violated the restrictive covenants. Based on its erroneous belief that the lots remained legally separated for the purposes of the restrictive covenants, the trial court never reached that issue. Thus, we reverse the trial court's summary judgment to the extent it determined that the lots remained legally separate, and we remand the case for the trial court to reconsider its judgment in light of this opinion.
The Dierckses also argue that the trial court erred in determining that the construction of the structure violated covenant 2.B., which provides that the "house [is] to be located on lot in accordance with zoning regulations of the City of Brewton, Alabama." The trial court determined that the structure, which is intended to garage a mobile home owned by the Dierckses, violated covenant 2.B. because a local zoning ordinance prohibits detached accessory buildings from being above 15 feet in height. By its plain language, covenant 2.B. only requires the location of the house on a lot to be in accordance with Brewton's zoning regulations. Covenant 2.B. does not regulate the height of accessory buildings by requiring compliance with local zoning regulations or otherwise. Thus, the trial court erred in concluding that the height of the structure violated covenant 2.B.[1]
Conclusion
Based on the foregoing, we reverse the summary judgment entered by the trial court, and we remand the case for the trial court to conduct further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
Pittman and Donaldson, JJ., concur.
Thompson, P.J., dissents, with writing, which Thomas, J., joins.
This appeal is from a summary judgment the Escambia Circuit Court ("the trial court") entered in favor of certain residents ("the residents") in the Second Alexander Heights Subdivision ("the subdivision") in their civil action against Robert Diercks and Carin Diercks, who also reside in the subdivision. In their action, the residents sought to enforce the "protective covenants," also known as restrictive covenants, of the subdivision and to require the Dierckses to remove what is characterized as a "pole barn/shed" from a second lot the Dierckses had purchased *221 behind the lot on which their residence is located.
We review a summary judgment pursuant to the following standard:
"This Court's review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce 'substantial evidence' as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989) ; Ala. Code 1975, § 12-21-12."
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala. 2004).
The evidentiary submissions in support of and in opposition to the residents' motion for a summary judgment indicate that the Dierckses reside in a house on lot 47, which faces Robin Drive in the subdivision. More than 16 years after moving into that house, they purchased lot 58, which was vacant. The front of lot 58 faces Brooks Boulevard. The back of lot 58 abuts the back boundary line of lot 47, and it also abuts the back boundary line of lot 48, which is next door to the Dierckses' house. In other words, lot 58 runs from Brooks Boulevard to the back of lots 47 and 48. There is a drainage ditch on the east side of lot 58, causing it to curve into a triangular or wedge shape, so that the front of the lot that abuts Brooks Boulevard is 78.5 feet in width. The map shows that the greater portion of lot 58 lies behind lot 48 rather than behind the Dierckses' lot 47. The Odoms, who are among the residents who brought this action, live on Brooks Boulevard, on lot 57, which is on the west side of lot 58.
The structure to be built on lot 58 is a detached accessory building, described in the Dierckses' application for a zoning variance as a "pole barn/shed" under which they intend to park their motor home. The application also states that the structure will exceed 15 feet in height, which exceeds the maximum height allowed for detached accessory buildings as set forth in the zoning requirements for the City of Brewton. Article IX, Section 9.142, City of Brewton Land Use and Development Ordinance ("the zoning ordinance"). According to the record, the Zoning Board of Adjustment did not grant the Dierckses the height variance they had requested. The Dierckses have appealed that decision. However, the Dierckses did not present any evidence to rebut the facts asserted by the residents.
Upon consideration of the evidence submitted, the trial court determined that there were no genuine issues of material fact and that, as a matter of law, the residents were entitled to the injunctive relief they sought, that is, to have the Dierckses enjoined from going forward with construction of the "pole barn/shed." Among other things, the undisputed evidence indicates that the structure exceeds the 15-foot height limit imposed by the zoning ordinance on detached accessory structures and that the front of the "pole barn/shed" opens onto the front of lot 58, which runs along Brooks Boulevard, in *222 violation of "protective covenant" 1.C. of the subdivision. That covenant provides that "carports and garages must not open on or face toward the front of the lot."
"Restrictive covenants will be recognized and enforced when established by contract, but they are not favored and will be strictly construed. Carpenter v. Davis, 688 So.2d 256, 258 (Ala. 1997). Our Supreme Court has held that
" 'in construing restrictive covenants, all doubts must be resolved against the restriction and in favor of free and unrestricted use of property. However, effect will be given to the manifest intent of the parties when that intent is clear.... Furthermore, restrictive covenants are to be construed according to the intent of the parties in the light of the terms of the restriction and circumstances known to the parties.'
" Hines v. Heisler, 439 So.2d 4, 5-6 (Ala. 1983)." Hipsh v. Graham Creek Estates Owners Ass'n, 927 So.2d 846, 848-49 (Ala. Civ. App. 2005). See also Grove Hill Homeowners' Ass'n v. Rice, 43 So.3d 609, 614 (Ala. Civ. App. 2010).
The restrictive covenants governing the subdivision ensure that houses and detached structures within the subdivision are built in compliance with the zoning ordinance and that the subdivision has a cohesive appearance. The effect of the covenants is to prohibit open garages and carports from being seen from the street and to prevent detached accessory buildings from detracting from the appearance of the neighborhood. The structure the Dierckses intend to build clearly violates at least some of the restrictive covenants at issue.
Because the structure at issue in this case violates the restrictive covenants governing the subdivision, and because the Dierckses presented no evidence to indicate that their structure does not violate those covenants, I believe that the summary judgment was proper. Because I would affirm the judgment of the trial court, I respectfully dissent.
Thomas, J., concurs.

In their complaint, the plaintiffs alleged only violations of the restrictive covenants. We do not express any opinion on whether the plaintiffs could have also sought independent enforcement of the zoning regulations of the City of Brewton regarding the height of the structure. The record discloses that the City of Brewton notified the Dierckses that the height of the structure violated a city ordinance. The Dierckses sought a variance to permit the construction, which was denied. The Dierckses have appealed that determination. We express no opinion on whether the variance should be permitted. We hold only that the height of the structure does not violate covenant 2.B.