MAIN, Justice.
Robert Diercks and Carin Diercks, residents of a subdivision located in Escambia County, purchased a vacant lot in the subdivision located directly behind their house and began construction of a garage on the lot. A group of homeowners in the subdivision ("the plaintiffs")[1] sued the Dierckses in the Escambia Circuit Court, contending that construction of the garage violated various restrictive covenants applicable to the lot. The trial court agreed. It entered a summary judgment in favor of the plaintiffs, enjoined the Dierckses from further construction on the garage, and ordered the removal of what had been constructed on the lot. On direct appeal, the Court of Civil Appeals reversed the judgment of the trial court, finding that the trial court had not properly applied the restrictive covenants. We granted certiorari to review that decision. For the following reasons, we reverse and remand.
I. Facts and Procedural History
The Second Alexander Heights Subdivision ("the subdivision") is located within the City of Brewton. The lots in the subdivision are subject to the following restrictive covenants:
"KNOW ALL MEN BY THESE PRESENTS: That Hines Realty Company, Inc., a corporation, the owner of Second Alexander Heights Addition to Escambia County, Alabama, a subdivision, as shown by plat of said subdivision recorded in Plat Book 5, Page 153, in *224 the Office of the Judge of Probate of Escambia County, Alabama, do hereby adopt the following Protective Covenants with reference to the property located in said subdivision:
"1. Land Use and Building Type.
"A. Single family dwellings only and accessory structures customarily incidental to this use.
"B. All accessory structures must be of the same design and constructed of the same materials as the main dwelling house.
"C. The carports and garages must not open on or face toward the front of the lot.
"2. Size and Location of Structure.
"A. Dwelling house to contain a minimum of 1,700 square feet of living space exclusive of carport, garage and/or open porches.
"B. House to be located on lot in accordance with zoning regulations of the City of Brewton, Alabama.
"3. Building lot to be a minimum of 100 feet in width at the front building line with the exception of Lots # 17, # 18, and # 27."
The main thoroughfare through the subdivision is Brooks Boulevard. Brooks Boulevard runs through the subdivision in roughly the shape of a circle, which is divided into northern and southern halves by Robin Drive. Building lots are located on both sides of Brooks Boulevard and Robin Drive. The Dierckses home is located on lot 47, which they purchased in 1993. Lot 47 fronts the north side of Robin Drive. In 2010, the Dierckses purchased lot 58, an unimproved lot located directly behind their home. Lot 58 fronts the south side of the northern half of Brooks Boulevard.
In 2013, the Dierckses began efforts to construct a garage on lot 58. They hired a contractor and applied for a building permit for the structure. The application for a building permit, however, was denied by the City of Brewton on the basis that a city ordinance prohibits an accessory building from being located on a lot by itself. A city official met with the Dierckses and recommended that they combine lot 58 with their adjacent lot.
On May 29, 2014, the Dierckses conveyed lots 47 and 58 to themselves in a combined metes and bounds description, subject to the restrictive covenants. The Dierckses also had the two lots combined into a single parcel for taxation purposes at the Escambia County tax assessor's office. The Dierckses, however, did not seek to have the subdivision formally "replatted" or to amend the existing plat.
On June 2, 2014, the City of Brewton issued the Dierckses a building permit for the garage, and the Dierckses moved forward with construction. It is undisputed that the garage, once completed, will open onto and face Brooks Boulevard.
On October 20, 2014, before the garage was completed, the City of Brewton halted construction of the garage on the basis that it was in violation of a city ordinance that limited the height of accessory structures to a maximum height of 15 feet. While the Dierckses were pursuing a variance to the height ordinance, the plaintiffs filed this lawsuit.[2] The lawsuit contended that the construction of the garage violated the restrictive covenants applicable to all lots in the subdivision and sought injunctive relief halting further construction of *225 the garage and the removal of the completed portion of the garage.
In February 2016, the plaintiffs moved for a summary judgment. They argued that (1) the garage violated restrictive covenant 1.A. because the garage was not an accessory structure to a single-family dwelling located on lot 58; (2) that it violated covenant 1.C. because it faced the front of lot 58; (3) that it violated covenant 2.A. because the garage was not a dwelling house containing a minimum of 1,700 square feet of living space; (4) that it violated covenant 2.B. because the garage was in violation of the City of Brewton's building-height zoning ordinance; and (5) that it violated covenant 3 because the front boundary line of lot 58 is only 78.5 feet wide.
The Dierckses responded that the garage did not violate any of the restrictive covenants because, they argued, lots 47 and 58 had been validly combined into a single lot for the purposes of applying the restrictive covenants. For example, they argued that the garage did not violate the prohibition in covenant 1.C. of garages facing the front of the lot because, they asserted, the consolidation of the lots "effectively shifted the 'back' of the parcel to that portion which faces Brooks Boulevard." They also asserted equitable defenses, which are not raised on appeal.
On May 6, 2016, the trial court entered a summary judgment in favor of the plaintiffs and against the Dierckses. It concluded that no material facts were in dispute and that the plaintiffs were entitled to a judgment as a matter of law. The trial court concluded that "[t]he [Dierckses]' conveying to themselves Lots 47 and 58 by the deed dated May 29, 2014, does not avoid the application of the protective covenants to Lot 58." The trial court held that the garage violated covenants 1.A., 1.C., 2.A., 2.B., and 3. It enjoined the Dierckses from further construction and ordered them to remove the existing portion of the garage before August 1, 2016. The Dierckses appealed. The trial court stayed its order pending appeal.
The Court of Civil Appeals reversed the judgment of the trial court. Diercks v. Odom, 254 So.3d 215 (Ala. Civ. App. 2017). Relying on Hoffman v. Tacon, 293 Ala. 684, 309 So.2d 817 (1975), the majority concluded that, because the restrictive covenants did not expressly forbid the combination of adjacent lots, the Dierckses had indeed validly combined lots 47 and 58. The majority opinion reasoned:
"In its judgment, the trial court, primarily by treating lot 58 as a separate lot from lot 47 and by viewing the structure as the lone structure on lot 58, determined that the structure violated the restrictive covenants. However, as we have held, the Dierckses validly combined the lots, and the question for adjudication should have been whether the construction of the structure on the combined lot violated the restrictive covenants."
Diercks v. Odom, 254 So.3d at 220. The court, therefore, remanded the case for the trial court to reconsider its judgment in light of its holding.[3]
*226 Presiding Judge Thompson issued a dissenting opinion in which Judge Thomas concurred. He reasoned:
"Among other things, the undisputed evidence indicates that ... the front of the [garage] opens onto the front of lot 58, which runs along Brooks Boulevard, in violation of 'protective covenant' 1.C. of the subdivision. That covenant provides that 'carports and garages must not open on or face toward the front of the lot.'
"....
"The restrictive covenants governing the subdivision ensure that houses and detached structures within the subdivision are built in compliance with the zoning ordinance and that the subdivision has a cohesive appearance. The effect of the covenants is to prohibit open garages and carports from being seen from the street and to prevent detached accessory buildings from detracting from the appearance of the neighborhood. The structure the Dierckses intend to build clearly violates at least some of the restrictive covenants at issue."
Diercks v. Odom, 254 So.3d at 222 (Thompson, P.J., dissenting).
We granted certiorari to review the judgment of the Court of Civil Appeals.
II. Standard of Review
"Because we are reviewing the Court of Civil Appeals' reversal of a summary judgment, our review is de novo. 'On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals.' Ex parte Toyota Motor Corp., 684 So.2d 132, 135 (Ala. 1996). 'The law is well established that a de novo standard applies to appellate review of a trial court's summary judgment.' Ex parte Patel, 988 So.2d 957, 959 (Ala. 2007) (citing Ex parte Fort James Operating Co., 895 So.2d 294 (Ala. 2004) )."
Ex parte City of Mobile, 37 So.3d 150, 152 (Ala. 2009).
III. Analysis
The Court of Civil Appeals concluded that, because the Dierckses had combined their two lots, the trial court was required to apply the restrictive covenants to the Dierckses' parcel as though it were a single lot. The court reversed the judgment of the trial court and remanded the case for the trial court to reconsider its judgment.
In Hall v. Gulledge, 274 Ala. 105, 109-10, 145 So.2d 794, 798 (1962), we discussed the nature of restrictive covenants:
" ' "Where the owner of a tract of land adopts a general scheme for its improvement, dividing it into lots, and conveying these with uniform restrictions as to the purposes for which the lands may be used, such restrictions create equitable easements in favor of the owners of the several lots, which may be enforced in equity by any one of such owners. Such restrictions are not for the benefit of the grantor only, but for the benefit of all purchasers. The owner of each lot has as appurtenant to his lot a right in the nature of an easement upon the other lots, which he may enforce in equity.
" ' "Whether such restriction creates a right which inures to the benefit of purchasers is a question of intention, and to create such right it must appear from the terms of the grant, or from the surrounding circumstances, that the grantor intended to create an easement in favor of the purchaser." '
"We further stated [in Scheuer v. Britt, 118 So.2d 658, 659-60 (Ala. 1928) ]:
*227 " 'In such cases the equitable right to enforce such mutual covenants is rested on the fact that the building scheme forms an inducement to buy, and becomes a part of the consideration. The buyer submits to a burden upon his lot because of the fact that a like burden is imposed on his neighbor's lot, operating to the benefit of both, and carries a mutual burden resting on the seller and the purchasers.'
"Quoting from the opinion in the same case on a former appeal it was noted:
" ' "Where a defined district is platted and publicly offered as a restricted district, the restrictive clauses in the several deeds are construed as mutual covenants, each lot subject to a servitude or easement in favor of all the others, including unsold lots of the grantor in the same plat. Such servitude being appurtenant to and running with the land, any subsequent purchaser of the lot within the plat, with notice of the easement thereon, takes it subject thereto, as between himself and other lot owners ...." ' "
In this case, there is no dispute that the subdivision was developed pursuant to a common scheme and that all the lots in subdivision were subject to the restrictive covenants. Nor is there any question that the servitudes imposed by the restrictive covenants attached to lot 58 at the time the subdivision became subject to the restrictive covenants. Likewise it is agreed that the property within lot 58, as designated in the subdivision plat, remains subject to the restrictive covenants. The question, rather, is one of interpretation. Specifically, how to interpret those covenants attaching to the property platted as lot 58 in light of the Dierckses' combination of lot 58 and lot 47 into a single parcel.
Concerning the construction of restrictive covenants, we have said:
"[A]ll doubts must be resolved against the restriction and in favor of free and unrestricted use of property. However, effect will be given to the manifest intent of the parties when that intent is clear and the restrictions are confined to a lawful purpose within reasonable bounds, and rights created by covenants have not been relinquished or otherwise lost. Wisneiwski v. Starr, 393 So.2d 488 (Ala. 1980). Furthermore, restrictive covenants are to be construed according to the intent of the parties in the light of the terms of the restriction and surrounding circumstances known to the parties. Kennedy v. Henley, 293 Ala. 657, 309 So.2d 435 (1975)."
Hines v. Heisler, 439 So.2d 4, 5-6 (Ala. 1983).
As an initial matter, we agree that, generally, lots can be combined and re-subdivided.[4] See, e.g., Hoffman, 309 So.2d at 685-86 (residential lot could be re-subdivided where re-subdivision was not expressly prohibited and did not violate any existing restrictive covenants). Nevertheless, we agree with the view that, absent an express provision of the covenants permitting a combined lot to be treated as a single lot for the purposes of applying the restrictive covenants, as was the case in Marengo Hills, Inc. v. Watson, 368 So.2d 856, 857 (Ala. 1979),[5] the property at issue *228 must always conform with the covenants as they originally attached to the property. See Claremont Prop. Owners Ass'n, Inc. v. Gilboy, 142 N.C.App. 282, 288, 542 S.E.2d 324, 328 (2001) ("[T]he property may be combined or re-subdivided into different lots for purposes of ownership or convenience, but, absent a provision in the covenants to the contrary, the property must always conform to the servitudes created by the covenants as they originally attached to the property.").
Applying these principles to the matter before us, we recognize that at least one covenant is violated by the construction of the garage. Covenant 1.C. provides that "carports and garages must not open on or face toward the front of the lot." There is no ambiguity in this provision when applied to lot 58 alone-the "front" of the lot obviously refers to the side fronting Brooks Boulevard. See, e.g., Smith v. Ledbetter, 961 So.2d 141, 145 (Ala. Civ. App. 2006) (defining the term "fronts" used in a restrictive covenant as meaning the lot frontage abutting a street or highway); Rhinehart v. Leitch, 107 Conn. 400, 140 A. 763 (1928) ("When used of a lot with a house upon it, ['front'] means that portion of the lot abutting upon the street toward which the house faces. So when used of a bare lot, by transposition of significance, it is that side toward which, in ordinary circumstances, a house, when built, will most likely face ....").
The Dierckses argue that their combination of lot 58, which fronts Brooks Boulevard, with lot 47, which fronts Robin Drive, creates an ambiguity as to which side of the combined lot is the "front." They contend that, consistent with the rules of construction, this ambiguity must be resolved in their favor.[6] We cannot agree.
Restrictive covenants must " 'be construed according to the intent of the parties in light of the terms of the restriction and surrounding circumstances known to the parties.' " Riverchase Homeowners Prot. Ass'n, Inc. v. City of Hoover, 531 So.2d 645, 647 (Ala. 1988) (quoting Hines, 439 So.2d at 5-6 ). Thus, we must apply the covenant as originally intended by the parties at the time the covenant was created. In this case, it is clear that the intent of the covenant was to prohibit a garage or carport located on lot 58 from opening onto Brooks Boulevard. The Dierckses may not unilaterally reverse the meaning of this covenant by the subsequent combination of the two lots into a single parcel. Thus, the Dierckses' garage violates the restrictive covenant prohibiting garages and carports from opening onto the front of the lot.
*229 This conclusion finds support in caselaw from other jurisdictions. For example, in Ingle v. Stubbins, 240 N.C. 382, 82 S.E.2d 388 (1954), the North Carolina Supreme Court determined that the combination of two lots and re-subdivision of those lots into three lots was not prohibited by the applicable covenants but that nothing authorized a change in the original "front" line of the lots for the purposes of applying the restrictive covenants. In Ingle, two adjacent lots, lots 10 and 11, in a residential subdivision were originally platted to front Bueno Street. Lot 10, however, was a corner lot, and had frontage on Plaid Street, which was considered a side street. The lots were subject to a restrictive covenant that provided that no building shall be located nearer than 50 feet to the "front" line. The owner of the lots re-divided the property to form three adjacent lots facing Plaid Street. The defendant purchased one of the three lots, the corner lot with frontage on both Bueno and Plaid Streets, and sought to construct a house facing Plaid Street. The side of the house, however, was set back only 30.5 feet from Bueno Street. The court held that the terms "front" and "side" as used in the restrictive covenant "means the front and side as each existed at the time the covenant was made." 240 N.C. at 389, 82 S.E.2d at 394. Thus, the court concluded that the proposed location of the house would violate the restrictive covenant prohibiting a building from being located nearer than 50 feet from the "front" line, i.e., Bueno Street. The court stated: "[T]here is nothing in the covenants that authorizes the change of original front line in respect to requirements as to building set back distances." 240 N.C. at 289, 82 S.E.2d at 394. See also Fawn Lake Maint. Comm'n v. Abers, 149 Wash.App. 318, 324-25, 202 P.3d 1019, 1022-23 (2009) (holding that property owners could not unilaterally modify their homeowners' fee obligations under the subdivision covenants by combining their two adjacent lots into one); Claremont Prop. Owners Ass'n, 142 N.C.App. at 289, 542 S.E.2d at 329 (holding that the restrictive covenants intended to fix a road-maintenance-fee obligation to each lot upon creation of the lot by recorded plat and that the combining of lots would not alter the fee obligations); and Tear v. Mosconi, 239 Mich. 242, 244, 214 N.W. 123, 124 (1927) ("A builder may not treat the side line of the lot as a front line, and by so doing avoid the restrictions.").
Because the construction of the garage to open onto Brooks Boulevard violates restrictive covenant 1.C., the trial court correctly entered a summary judgment as to that issue. Thus, to the extent that the Court of Civil Appeals' decision is to the contrary, that decision is reversed, and we remand this case for further proceedings consistent with the principles discussed above. We pretermit discussion as to the remaining restrictive covenants.
IV. Conclusion
The judgment of the Court of Civil Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
Stuart, C.J., and Bolin, Parker, Shaw, Wise, Bryan, and Sellers, JJ., concur.
Murdock, J., concurs in the result.

Phillip D. Odom, Linda Joy Odom, James Steven White, Gregory Wayne White, Kimberly Gibson White, Jason R. Castleberry, and Renee P. Ryan.

The request for a variance was denied by the City of Brewton. The Dierckses' appeal of that determination remains pending.

The Court of Civil Appeals also held that the trial court erred in concluding that the height of the garage violated covenant 2.B., which provides that the "house [is] to be located on the lot in accordance with zoning regulations of the City of Brewton, Alabama." The court explained-in our opinion, convincingly-that the plain language of covenant 2.B. applied only to the location of the house on a lot, and "does not regulate the height of accessory buildings by requiring compliance with local zoning regulations or otherwise." 254 So.3d at 220.

Here we note that these terms are not synonymous with "replatting," which generally refers to the formal amendment or replacement of an approved subdivision plat.

The covenant in Marengo Hills provided that "[n]othing herein contained shall prevent a purchaser from purchasing two or more adjoining lots for the purpose of constructing a dwelling on the composite area thereof, in which the entire area shall be treated as one residential building lot for the purpose of these restrictive covenants ...." 368 So.2d at 857.

The Dierckses also argue that, if the term "front" is construed only to refer to the side of lot 58 facing Brooks Boulevard, then the lot is unusable in its entirety because lot 58 only has 78.5 feet of frontage on Brooks Boulevard and covenant 3 requires that a building lot must be "a minimum of 100 feet in width at the front building line." (Emphasis added.) This argument, however, confuses the front lot line with the front building line, which typically references the place on the lot where the front of the building is constructed, and may correspond with a setback requirement. See "building line," Black's Law Dictionary 235 (10th ed. 2014) (building line "is often referred to as a setback requirement"). Given the wedge shape of lot 58, it appears that covenant 3 would pose no restriction to building on lot 58 so long as the front building line is set back to a point on the lot where the lot width is at least 100 feet. We note that the record does not indicate the width of lot 58 at the front building line of the garage.